**June BETTS, Plaintiff,**

**v.**

**HAMILTON COUNTY BOARD OF MENTAL RETARDATION, et al., Defendants.**

**No. C–1–85–1108.**

United States District Court, S.D. Ohio, W.D.

March 27, 1986.

Robert F. Laufman, Cincinnati, Ohio, for plaintiff.

Arthur M. Ney, Jr., Thomas E. Deye, Cincinnati, Ohio, for Hamilton County Bd. of Mental Retardation & Developmental Disabilities.

Jeffrey J. Jurca and Andrew I. Sutter, Asst. Atty. Gen., Chief Counsel's Staff, Columbus, Ohio, for Ohio Public Employers Retirement System Bd.

## OPINION AND ORDER

SPIEGEL, District Judge:

This matter came on for consideration of the motion for summary judgment and declaratory judgment filed by plaintiff (doc. 6), memorandum in opposition by defendant Hamilton County Board of Mental Retardation and Developmental Disabilities (HCBMRDD) (doc. 10), and by defendant Public Employees Retirement System of Ohio (PERS) (doc. 11), supplement to memorandum in opposition by defendant PERS (doc. 12), reply memorandum to documents 10 and 11 by plaintiff (doc. 14), reply memorandum by defendant HCBMRDD (doc. 22), and supplementary memorandum on summary judgment by plaintiff (doc. 18). The defendants PERS and HCBMRDD have also filed their cross-motions for summary judgment (docs. 21 and 26) to which plaintiff has filed her memorandum in opposition (doc. 28) and the defendant PERS has filed its response (docs. 29 and 30).

This is an action for lost benefits and payment of attorney fees arising out of an alleged violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.* which provides in part:

§ 623(a) It shall be unlawful for an employer—

(1) to ... otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; ....

Plaintiff alleges that defendants HCBMRDD and PERS violated the above-quoted section of the ADEA by compelling plaintiff to involuntarily retire by denying her disability retirement benefits because of her age.

Defendants make the following assertions in their responses to plaintiff's motion for summary judgment and in their own motions for summary judgment. First, defendants maintain that plaintiff voluntarily retired in June 1985 and that such voluntary retirement precludes an action for age discrimination. Defendants argue plaintiff voluntarily chose to retire instead of undergoing a medical examination to prove the need for placing her on a medical leave of absence and therefore, age was not a factor in the events giving rise to this litigation. Second, defendants maintain that even if plaintiff was discriminated against on the basis of age, its practice of denying disability retirement benefits to individuals sixty-years of age and over was consistent with the laws and regulations in effect in June 1985, that the disability retirement plan pre-existed the promulgation of the ADEA, and such discrimination is permissible under 29 U.S.C. § 623(f)(2) which provides:

It shall not be unlawful for an employer, employment agency or labor organization—

.... (2) to observe the terms of ... any bona fide employee benefits plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefits plan shall ... permit the involuntary retirement of any individual [40 years of age but less than 70 years of age] because of the age of such individual ...

Finally, defendant PERS maintains that it is not an "employer" for the purposes of the ADEA, and therefore, cannot be held accountable for any discriminatory practices.

In considering a motion for summary judgment, the narrow question we must decide is whether there is "no genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P.

The Court cannot try issues of fact on a Rule 56 motion, but is empowered to determine only whether there are issues to be tried. *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982). The moving party "has the burden of showing *conclusively* that there exists no genuine issue as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.) (emphasis original), *cert. denied*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). And, "while the movant's papers are to be closely scrutinized, those of the opponent are to be viewed indulgently." *Id.* at 63. "[T]he District Court [is] obligated to consider not only the materials specifically offered in support of the motion, but also all 'pleadings, depositions, answers to interrogatories, and admissions' properly on file and thus properly before [the] court." *Id.*, quoting Rule 56(c), Fed.R.Civ.P. Summary judgment "must be used only with extreme caution for it operates to deny a litigant his day in court." *Id.*

For purposes of the cross-motion for summary judgment, the following facts were stipulated. In addition, the parties have fully briefed the issues, provided the Court with the applicable sections of the Ohio Revised Code setting forth the public employee retirement system at issue, and have presented their positions through oral arguments before the Court.

Plaintiff was sixty-one years of age and a six-year member of PERS when she was denied disability retirement benefits. For approximately five years, plaintiff was employed as a speech pathologist for defendant HCBMRDD. In 1984, plaintiff was not satisfactorily performing her duties as a speech pathologist and voluntarily accepted a transfer to the Beckman Adult Center to be employed as a workshop specialist. By September 1984, plaintiff was unable to satisfactorily perform her new job duties, apparently due to medical reasons. As a result, she voluntarily accepted a position as a Teachers' Aid with defendant HCBMRDD at a lower salary. By late May 1985, plaintiff's apparent medical problems continued and she was unable to perform her duties as a Teachers' Aid. At that time, HCBMRDD supervisory staff advised plaintiff that she could choose to voluntarily retire within ten days or they would begin steps to force her to take a medical leave of absence. Voluntary retirement would provide plaintiff with $139.14 per month income and continued medical benefits, while forced medical leave was without pay or medical benefits.

Subsequently, plaintiff's daughter contacted HCBMRDD and inquired about the possibility of her mother obtaining disability retirement benefits. She was told that the defendant PERS should be contacted, as it alone makes the determination of eligibility for disability retirement. On June 3, 1985, plaintiff met with HCBMRDD personnel and reviewed the only options available to her; that is voluntary retirement or forced medical leave. That same date, she signed a letter stating her intention to retire. Eleven days later, plaintiff filed an age discrimination charge with the Equal Employment Opportunity Commission (EEOC) against the defendants.

Shortly thereafter, plaintiff filed with HCBMRDD her application for disability retirement, a report of her attending physician indicating that she was permanently disabled, and a letter requesting HCBMRDD to disregard her letter of June 3, 1985. Plaintiff's application for disability retirement was denied pursuant to Ohio Rev.Code § 145.35 which provides in part:

Medical examination for disability retirement; reinstatement of persons not disabled.

Application for disability retirement may be made by a member or by a person acting in his behalf, or by the member's employer provided the member has at least five years of total service credit and *has not attained age sixty* and is not receiving disability benefits under any other Ohio state or municipal retirement programs. (Emphasis added.)

The disability retirement plan provides that a retirant shall receive a retirement benefit in an annual amount no less than thirty percent of the retirant's final average salary. *See* Ohio Rev.Code § 145.36. Moreover, a disability retirant retains his membership status in PERS and is considered on leave of absence from his position during the first five years on the retired list. Within that period, he can be restored to his previous position and salary or to a similar position and salary. Ohio Rev.Code § 145.39. Had plaintiff qualified for disability retirement, she would have received $355.02 per month based upon thirty percent of her final average annual salary of $14,260.00 and would have been eligible for reinstatement at a comparable salary and position within the first five years of retirement in the event her disability ceased. To the contrary, plaintiff is receiving $158.50 per month on "voluntary retirement", based upon her six years of membership in the PERS and is ineligible for regular re-employment in any capacity pursuant to the voluntary and compulsory retirement provisions of Ohio Rev.Code § 145.32.

■ The ADEA forbids an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). There are two methods of proving age discrimination. The most easily understood type of discrimination is "disparate treatment" which is evident when the employer treats some people less favorably than others because of their age. In a disparate treatment case, proof of discriminatory motive is critical. *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265–266, 97 S.Ct. 555, 563–64, 50 L.Ed.2d 450 (1977). A second method of proving age discrimination is by demonstrating that the use of a facially neutral employment practice or the use of subjective criteria had a disparate impact on individuals in the protected age group. *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Intent need not be shown in a discriminatory impact case. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

■ We conclude that defendants' disability retirement plan has a disparate impact upon individuals in the protected age group. On its face and in its effect, the disability retirement plan denies benefits to certain employees because they are sixty years of age or older, and we may assume that the plan was purposefully drafted to have that effect. *EEOC v. Bordens, Inc.*, 724 F.2d 1390 (9th Cir.1983). That is not to say, nor do we find any evidence in the record, that there was any ill will on the part of the defendants toward plaintiff or anyone in the protected group because of their age. In that respect, we find that this is a difficult case. It may well be that the plan was designed to discriminate on the basis of length of services rather than upon age. For example, a sixty-year-old individual with thirty years of service, who would not be eligible for disability retirement benefits, may receive higher monthly benefits and fare better than a younger individual collecting disability retirement, based upon his accumulated voluntary retirement benefits. At first glance, the plan appears to be eminently just, as it provides disability benefits to those younger individuals who become permanently disabled and who would otherwise have no source of income during their disability. It also preserves any career opportunities an individual has obtained through his employment during the first five years of his disability. In addition, a sixty-year-old permanently disabled individual, who has served the public for many years, would be sufficiently compensated through voluntary retirement. However, these virtues of the plan are diminished when similarly situated individuals, but for their age, are compared. For example, the plan discriminates between a fifty-nine-year-old or twenty-five-year-old permanently disabled individual with six years of service and a person sixty years of age or older with an identical disability, average annual salary, and

length of service, because they would not receive identical monthly benefits or the option of returning to work if their disability ceases. The discrepancy in monthly benefits and lack of opportunity to return to work is based solely upon age, as the sixty-year-old individual is precluded from seeking the option of disability retirement. The important factor in our analysis is the disparate impact that defendants' disability retirement plan has upon individuals, such as plaintiff, who are in the protected age group and who have not accumulated sufficient retirement benefits to compensate for the denial of disability benefits, based solely upon their age. In that regard, the plan is discriminatory on the basis of age.

The foregoing conclusion, however, does not resolve the question before us, as some types of age discrimination are permissible under the ADEA. Our second inquiry is whether defendants' disability retirement plan qualifies for the "bona fide employee benefits plan" exception under the ADEA, 29 U.S.C. § 623(f)(2), which provides:

It shall not be unlawful for an employer . . .

(2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefits plan shall excuse the failure to hire any individual, and no such seniority system or employee benefits plan shall require or permit the involuntary retirement of any individual specified by section 631(a) of this title because of the age of such individual; . . . .

In order for defendants' plan to qualify under the exemption, it must meet the following four criteria: (1) it must be the sort of "plan" covered by the exemption; (2) it must be "bona fide," which means that it exists and pays substantial benefits; (3) the defendants' act must be in observance of its plan; (4) the plan must not be a subterfuge to evade the purposes of the act. Finally, even if defendants' plan meets the four criteria, it may not "require or permit involuntary retirement of any such individual . . . because of the age of such individual." 29 U.S.C. § 623(f)(2).

■ A plan qualifies under the exemption if it is a retirement, insurance, or pension plan. However, that list is not exclusive. *Brennan v. Taft Broadcasting Co.*, 500 F.2d 212, 215 (5th Cir.1974) Retirement, pension, and insurance are merely examples of the types of plans in which Congress intended to allow age distinctions. *EEOC v. Westinghouse Electric Corporation*, 725 F.2d 211, 224 (3d Cir.1983). Contrary to complex, ongoing benefit schemes, simple fringe benefits such as severance pay policies, *see EEOC v. Borden's, Inc.*, 724 F.2d 1390 (9th Cir.1984), lay-off insurance and benefits, *see EEOC v. Westinghouse Electric Corp.*, 725 F.2d at 211, and payment for accrued unused sick leave, *see Alford v. City of Lubbock*, 664 F.2d 1263 (5th Cir.), *cert. denied*, 456 U.S. 975, 102 S.Ct. 2239, 72 L.Ed.2d 848 (1982), are not excepted under the exemption. *See also* 29 C.F.R. 860.120(a)(1). Moreover, the EEOC guidelines specifically prohibit denial of long term disability benefits on the basis of age. 29 C.F.R. 860.120(F)(1)(iii).[1] Such an administrative interpretation of the ADEA is entitled to great deference. *Griggs*, 401 U.S. at 433, 91 S.Ct. at 854.

We find that the "disability retirement" plan in question here is difficult, at best, to categorize. On the one hand, defendants point out that their disability retirement

---

1. 29 C.F.R. 860.120(F)(1)(iii) provides in part: [W]here the employees who are disabled at younger ages are entitled to long-term disability benefits, there is no cost based justification for denying such benefits altogether, on the basis of age, to employees who are disabled at older ages. It is not unlawful to cut off long-term disability benefits and coverage on the basis of some non-age factor, such as recovery from disability. Nor is it unlawful to terminate benefits or coverage, on the basis of age, at age 70. Reductions on the basis of age before age 70 in the level or duration of benefits available for disability are justifiable only on the basis of age-related cost considerations as set forth elsewhere in this section. . . .

plan continues indefinitely, and therefore, they argue, it is a legitimate retirement option, specifically exempted from the ADEA. On the other hand, we cannot ignore the fact that defendants' plan has the salient features of a disability plan, as a disability retirant must be permanently disabled or presumed to be permanently disabled and may be restored to his former position and salary if his disability ceases within five years. In essence, the disability retirant is considered on leave of absence for the first five years of his retirement. Ohio Rev.Code §§ 145.35 and 145.39. We find it unnecessary to determine whether the plan in question is a disability plan, excepted from the exemption, or whether it is a retirement plan, specifically covered by it. The critical factor in our determination of whether defendants' plan is the type of plan exempted is whether it is based upon age-related cost factors, as set forth in the regulatory interpretation of that section.

The legislative history of this provision indicates that its purpose is to permit age-based reductions in employee benefits plans where such reductions are justified by significant cost considerations. Accordingly, section 4(f)(2) does not apply for example, to paid vacations and uninsured paid sick leave, since reductions in these benefits would not be justified significant cost considerations. Where employee benefit plans do meet the criteria in section 4(f)(2), benefit levels for older workers may be reduced to the extent necessary to achieve approximate equivalency in cost for older and younger workers.

29 C.F.R. 860.120(a)(1).

Plaintiff argues that the exemption does not apply because the plan does more than reduce benefits, as individuals at a certain age are precluded from receiving disability retirement benefits altogether, and in any event, such "reductions" are not based upon significant cost considerations. Plaintiff argues that contrary to insurance and pension plans, it would cost no more to provide disability benefits to a sixty-one-year-old employee than a twenty-five-year-old employee, provided both had the same number of service years and final average salary. Indeed, a twenty-five-year-old retirant would receive much more in the way of monetary benefits over his lifetime than one who became disabled at sixty-one.

■ As to plaintiff's first argument, we are uncertain whether defendants' benefit package, when taken as a whole, does more than permit an age-based reduction in employee benefits. While persons sixty years of age and older are precluded from disability benefits, they are eligible for voluntary retirement. However, we do not reach that issue because we agree with plaintiff that even if the benefit package merely permits an age-based reduction, it is not justified by significant cost considerations and therefore, it is not the type of plan contemplated by the exemption.

As to the second requirement for qualifying for the exemption, an employee benefits plan is bona fide if it exists and pays substantial benefits. *Carpenter v. Continental Trailways*, 635 F.2d 578 (6th Cir. 1980). If defendants' plan was the type of plan exempted by section 4(f)(2), we would have little difficulty concluding that it was bona fide.

■ However, we conclude that other requirements were not met because defendants' act was not in observance of the plan and the plan impermissibly requires or permits involuntary retirement on the basis of age. For purposes of our analysis, these two factors are closely related. Defendants contend that the central question in this litigation is whether plaintiff has presented sufficient evidence to permit a reasonable fact-finder to conclude that age was a factor in the actions taken by HCBMRDD against her personally. The thrust of their argument is that plaintiff was given the option of voluntary retirement or a medical leave of absence, solely because of her poor job performance due to apparent medical problems. Plaintiff does not dispute that fact. However, central to plaintiff's argument, and of utmost importance to our analysis, is the impact that defendants' disability retirement plan has

upon individuals such as plaintiff who are in the protected age group. Because of plaintiff's age, she was presented with two options rather than three. Those options were "voluntary retirement" or forced medical leave. The former option provides retirement and medical benefits. The latter option provides neither. We conclude that the situation is analogous to constructive discharge which arises when working conditions are so difficult or unpleasant that a reasonable person in the employee's shoes would feel compelled to resign. *See Jacobs v. Martin Sweets Co., Inc.*, 550 F.2d 364 (6th Cir.1977). In essence, plaintiff was presented with a choice of early retirement or nothing (a livelihood or none), and we therefore conclude that plaintiff was forced into retirement because of her age.

In 1978, section 623(f)(2) was amended in part, to include the following language:

and no such ... employee benefit plan shall require or permit the involuntary retirement of any individual ... because of the age of such individual. 29 U.S.C. § 623(f)(2) as amended, Pub.L. 95–256 § 2(a), Apr. 6, 1978, 92 Stat. 189.

■ The amendment to the ADEA, forbidding forced early retirement in essence overruled the Supreme Court's decision in *United Airlines, Inc. v. McMann*, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977), which held that the ADEA did not prohibit early retirement pursuant to a mandatory retirement provision in a bona fide plan, even if the sole basis for early retirement is age. *See EEOC v. Chrysler Co.*, 733 F.2d 1183, 1185 (6th Cir.1984). We conclude that the amendment should be applied to this case because plaintiff retired in 1985 and we are to apply the laws as it stood when the controversy arose. *Carpenter*, 635 F.2d at 580. Having concluded that the plan requires or permits the involuntary retirement of an individual because of

his age, we need not address the issue of whether or not the plan is a subterfuge to evade the purposes of the ADEA.

■ However, we note that even if this controversy had arisen prior to the 1978 amendment, the exemption would not apply because defendants did not act in observance of the plan. Congress' intent in enacting section 4(f)(2) was to permit involuntary termination only if the employee benefit plan specifically provides for it. *Sexton v. Beatrice Foods, Co.*, 630 F.2d 478 (7th Cir.1980).

[A]n employer does not observe the terms of the plan unless the plan expressly sanctions the decision to force the employee to retire early as well as the decision to pay him substantial benefits. Both of these decisions must be pursuant to some express provision in the plan if the employer wishes to claim that he observed the terms of the plan by forcing an employee to retire early.

*Id.* at 486.

Under the PERS, the normal retirement date is the thirtieth day of June of any year a member of the system has attained the age of seventy. A member who has passed his sixtieth birthday and has five or more years of total service credit, may elect early retirement. However, the PERS does not contain an express provision for involuntary retirement, at the employer's option, before an employee attains the age of seventy. Therefore, the employer did not observe the terms of the plan when it forced plaintiff to retire.

■ For the foregoing reasons, we conclude that the disability retirement plan conflicts with, and is in violation of the ADEA. In 1974, the ADEA was amended to extend coverage to state and local employees.[2] In *EEOC v. Wyoming*, 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983),

---

**2.** *See, e.g.,* H.R.Rep. No. 913, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad. News 2811, 2850 ("The committee expects that expanded coverage under the Age Discrimination in Employment law will remove discriminatory barriers against employment of older workers in government jobs at the Federal and

local government levels as it has and continues to do in private employment."); 120 Cong.Rec. 8768 (1974) (remarks of Senator Benson) ("The passage of this measure insures that Government employees will be subject to the same protections against arbitrary employment based on age as are employees in the private sector.").

the Supreme Court held that the extension of the ADEA to cover state and local governments is a valid exercise of Congress' powers under the Commerce Clause and is not precluded by the Tenth Amendment. *Id.* To the extent that the 1978 ADEA amendments conflict with existing state statutes, the Supremacy Clause dictates that federal law prevail. *Orzel v. City of Wauwatosa Fire Dept.,* 697 F.2d 743, 752 (7th Cir.1983).[3]

Finally, we must determine whether PERS is an "employer" within the meaning of the ADEA, and therefore, can be held liable for discriminatory practices on the basis of age. PERS argues that it cannot be defined as an employer because it is independent of HCBMRDD and is only involved to the extent that it receives county contributions to the public employees retirement system pursuant to Ohio Rev. Code § 145.48.

■ The ADEA, *inter alia,* prohibits employers from discriminating on the basis of age. Employer is defined to include a person engaged in an industry affecting commerce employing a specified number of employees for a specified period of time, and any agent of such person. 29 U.S.C. § 630(b). Plaintiff asserts that criteria employed in determining liability under Title VII of the 1964 Civil Rights Act should be applied to cases arising under the ADEA. In *Morelock v. NCR Corporation,* 546 F.2d 682 (6th Cir.1976), our parent circuit noted that the "ADEA is an offspring of the Civil Rights Act of 1964" and that "[t]he prohibitions of the ADEA are in terms virtually identical to those of Title VII of the Civil Rights Act of 1964, except that 'age' has been substituted for 'race, color, religion, sex or national origin.' ..." and therefore,

"[A]n analogous application of such standards should not be disregarded." *Id.* at 686 (citations and footnotes omitted). Accordingly, we conclude that adopting the Title VII criteria for purposes of this case is appropriate.

■ The Sixth Circuit has held that "Title VII ... should not be construed narrowly." *Tipler v. du Pont de Nemours & Co.,* 443 F.2d 125, 131 (6th Cir.1971). For purposes of Title VII, the term "employer" "has been construed in a functional sense to encompass persons who are not employers in conventional terms, but who nevertheless control some aspect of an individual's compensation, terms, conditions, or privileges of employment." *Spirt v. Teachers Insurance and Annuity Assoc.,* 475 F.Supp. 1298, 1308 (S.D.N.Y.1979). *See also EEOC v. Wooster Brush Co.,* 523 F.Supp. 1256 (N.D.Ohio 1981).[4] In this case, defendant PERS does not deny that it is vested with the general administration and management of the Public Employees Retirement System and that it denied plaintiff's application for disability retirement in accordance with the provisions of Ohio Rev.Code § 145.35. Therefore, we conclude that PERS is an employer for purposes of the ADEA because it controls some aspects of plaintiff's compensation, terms, conditions, and privileges of employment.

Accordingly, plaintiff's motion for summary judgment and declaratory judgment (doc. 6) is granted, the cross-motions for summary judgment by defendant PERS (doc. 21) and by defendant HCBMRDD (doc. 26) are denied.

---

**3.** *See also* 29 C.F.R. § 1625.6(c) (1981 Supp.): Many State and local governments have enacted laws or administrative regulations which limit employment opportunities based on age. Unless these laws meet the standards for the establishment of a valid bona fide occupational qualification under section 4(f)(1) of the Act, they will be considered in conflict with and effectively superseded by the Act.

**4.** *See Cannon v. State of Delaware,* 523 F.Supp. 341 (D.Del.1981) (Personnel Commission may be held liable under Title VII as agent of state, responsible for supervising the operation of the merit system); *Hannah v. Teachers' Retirement System,* 26 FEP Cases 527 (S.D.N.Y.1981) and *Probe v. State Teachers' Retirement System,* 27 FEP Cases 1306 (C.D.Cal.1981) (State Teachers' Retirement Systems held to be employers of contributers or members for purposes of Title VII.

This matter is set for a status conference on May 2 at 3:00 P.M. 1986 to discuss further proceedings consistent with this opinion.

SO ORDERED.