848 F.2d 692
 46 Fair Empl.Prac.Cas. 1608,
46 Empl. Prac. Dec. P 38,023, 56 USLW 2711,
9 Employee Benefits Ca 2503
 June M. BETTS, Plaintiff-Appellee,
v.
HAMILTON COUNTY BOARD OF MENTAL RETARDATION AND
DEVELOPMENTAL DISABILITIES (86-3676) and Ohio
Public Employees Retirement System of
Ohio, (86-3676/4034),
Defendants-Appellants.
 Nos. 86-3676, 86-4034.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 19, 1987.
Decided June 3, 1988.
 
 Andrew I. Sutter, argued, Nancy J. Miller, Asst. Attys. Gen., Columbus, Ohio, for Ohio Public Employees Retirement System.
 Arthur M. Ney, Jr., Thomas E. Deye, argued, Asst. Pros. Attys., Cincinnati, Ohio, for Hamilton County Bd. of Mental Retardation and Developmental Disabilities.
 Robert F. Laufman, argued, Cincinnati, Ohio, for Betts.
 Alfred Miller, Steven S. Honigman, Peter N. Greenwald, Nancy K. Eisner, New York City, American Ass'n. of Retired Persons, amicus curiae, for appellee.
 Susan E. Rees, argued, EEOC, Gwen Young Reams, Washington, D.C., Johnny J. Butler, Mark S. Flynn, amicus EEOC, for appellee.
 Before MERRITT, MARTIN and WELLFORD, Circuit Judges.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 Defendants Hamilton County Board of Mental Retardation and Developmental Disabilities and Public Employees Retirement System of Ohio appeal from an order granting June Betts' motion for summary judgment and declaratory judgment in this age discrimination case.
 
 
 2
 Betts worked for the Mental Retardation Department of Hamilton County and was covered by the state retirement system and the Age Discrimination in Employment Act, 29 U.S.C. Secs. 621-34. Her work degenerated because of medical problems until she became disabled at age sixty-one. After negotiations, she was given the choice of two alternatives: an unpaid medical leave or length of service retirement. She was not offered disability retirement as a third choice. She was not allowed to have a disability pension because of a provision in Ohio's pension law preventing persons over sixty from receiving disability pensions and allowing them only to receive regular age retirement pensions.[1] Betts accepted length of service retirement and now receives $158.50 per month in benefits. A similarly situated younger employee would have been entitled to a disability benefit of $355.02 per month.
 
 
 3
 In granting Betts' motion for summary judgment, the district court held that the plan violated the Act. The district court found that the plan was discriminatory on its face and in its effect and did not qualify for the bona fide employee benefits plan exception to the Act. Specifically, the district court concluded that the plan did not qualify under the exception because it is not the type of plan covered by the exception and because the defendants did not act in observance of the plan when they forced Betts into retirement because of her age.
 
 
 4
 Under 29 U.S.C. Sec. 623(a)(1), an employer may not use age as a basis on which to discriminate against an employee in the compensation, terms, conditions, or privileges of employment. When there is direct evidence that a benefit plan discriminates on the basis of age, the plan is unlawful unless it falls within the bona fide employee benefit plan exception of 29 U.S.C. Sec. 623(f)(2). In 1978, Congress further limited this exception by providing that plans that fall within the exception are nevertheless unlawful if they permit or require the involuntary retirement of an individual because of age.[2] In amending section 623(f)(2), Congress expressly repudiated the Supreme Court's decision and reasoning in United Airlines v. McMann, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977), which held that a bona fide benefit plan that treated older employees differently and predated the Act need not be justified by any business purpose. H.R.Conf.Rep. No. 95-950, 95th Cong., 2d Sess. 8, reprinted in 1978 U.S.Code Cong. & Admin.News 504, 529. In light of this legislative intent, the district court noted that the "critical factor in [the] determination of whether defendants' plan is the type of plan exempted is whether it is based upon age-related cost factors, as set forth in the regulatory interpretation of that section." 631 F.Supp. 1198, 1204 (S.D.Ohio 1986). See 29 C.F.R. 860.120(a)(1); 29 C.F.R. 860.120(f)(1)(iii).[3] We agree. Under the Act, an age-based benefit plan which denies disability retirement to older employees in favor of forcing length of service retirement is unlawful unless it can be justified by a substantial business purpose. As the Seventh Circuit recently declared, "where, as in the present case, the employer uses age--not cost, or years of service, or salary--as the basis for varying retirement benefits, he had better be able to prove a close correlation between age and cost if he wants to shelter in the safe harbor of [29 U.S.C. Sec. 623(f)(2) ]." Karlen v. City Colleges of Chicago, 837 F.2d 314, 319 (7th Cir.1988). Accord Equal Employment Opportunity Commission v. City of Mt. Lebanon, Pennsylvania, 842 F.2d 1480, 1493 (3d Cir.1988), ("By adding Sec. 623(f)(2), Congress intended to relieve employers of the burden of providing equal benefits to all employees only when the cost of providing lower benefits to older workers is approximately equal to the cost of providing greater benefits to younger workers.").
 
 
 5
 In her motion for summary judgment, Betts argued that the plan could not be justified by any business purpose. Under the disability plan, two employees with the same number of service years and the same final salary are treated indentically unless one of the two employees is 60 or older. Betts argued that there was no economic justification for providing the younger employee with disability benefits while denying disability benefits to the older employee. To the contrary, Betts suggested that this arrangement is likely to cost the employer more because the employee who becomes disabled at a younger age should draw more in benefits over the course of his lifetime than the employee who becomes disabled at 60 or older.
 
 
 6
 Despite having every opportunity, the defendants declined to introduce any cost figures or other economic justification for the different treatment of employees over sixty. Consequently, the district court reached its conclusion that "the benefit package ... is not justified by significant cost considerations" without the benefit of having the issue fully briefed by both parties. The defendants now argue that, at a minimum, this court should remand the case to allow them to put evidence before the district court concerning age-related cost considerations. The defendants do not contend that the district court prevented them from presenting evidence of cost considerations. Cf. Cipriano v. Board of Education of City School District, 785 F.2d 51 (2d Cir.1986). In fact, the record indicates that, despite Betts' arguments that the plan cannot be justified by cost considerations, the defendants made no effort to submit any evidence on the subject. Consequently, we have no choice but to affirm the district court's entry of summary judgment in favor of Betts; a non-moving party who, in the face of a motion for summary judgment, makes no effort to satisfy his burden of production is not entitled to a second opportunity to satisfy his burden once the motion has been granted.
 
 
 7
 Finally, we find that the district court did not abuse its descretion in awarding attorney's fees.
 
 
 8
 The judgment of the district court is affirmed.
 
 
 9
 WELLFORD, Circuit Judge, dissenting.
 
 
 10
 This is a difficult case in which plaintiff desires to obtain disability benefits which would give her a greater amount than would retirement benefits which she contends she was forced to seek. Betts was physically incapable of continuing public employment at age 61, and had only five years of active service with her employer at the time of retirement. She contends that the practice of defendants and their plan which carries out an Ohio statutory requirement violates the Age Discrimination in Employment Act (ADEA) (29 U.S.C. Sec. 621 et seq.).
 
 
 11
 The defendants maintain that the plaintiff voluntarily retired due to her diabetic condition, and thus has no basis for her action asserting age discrimination. They also contend that Betts chose to retire instead of undergoing a medical examination, the result of which may have given the parties other options less favorable to Betts than forced retirement. Defendants also maintain they are carrying out the terms of a bona fide employee benefit or retirement plan which is exempt from ADEA requirements. (29 U.S.C. Sec. 623(f)(2)). Defendants assert, in addition, that if plaintiff were, in effect, discriminated against under the present law and regulations, defendants' practice under the plan in question pre-existed ADEA and is lawful. To put it another way, discrimination, if any, was due to length of service rather than age and was thus not in contravention of ADEA. PERS, moreover, contends that it is not an "employer" within the meaning of ADEA, and thus should not, in any event, be liable for imposition of plaintiff's attorney fees. I agree with the contentions of the defendants and, therefore, dissent from the view of other members of the panel.
 
 
 12
 The district court concluded that the plan was discriminatory on the basis of age, although in some respects it appeared to be justified. The district court also found that the claimed exemption from ADEA sought by the defendants did not apply. The Equal Employment Opportunity Commission has intervened and was permitted to participate by brief and by argument. It supports the position of the plaintiff. Defendants challenge the regulatory interpretation relied upon by the district court, 29 C.F.R. 860.120(a)(1) (1979)[1], in its decision published at 631 F.Supp. 1198 (N.D.Ohio 1986). The district court discussed this regulatory interpretation in considering "the critical factor in our determination of whether defendants' plan is the type of plan exempted [under ADEA] ... based upon age-related cost factors." Id. at 1204. Not surprisingly the EEOC's brief supports its "guidelines" which it contends are in accord with its regulatory interpretation and which it asserts provides "that an employer can demonstrate that a plan provision is 'not a subterfuge' and is consistent with the Act's purpose, by showing that 'the lower level of benefits is justified by age-related cost considerations.' 29 C.F.R. 860.120(d)."
 
 
 13
 Betts filed an original complaint in this case on June 14, 1985, on the same day that she filed her charge against defendants. 29 U.S.C. Sec. 626(d) provides, in pertinent part, that "[n]o civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission." The original complaint obviously was not in compliance with Sec. 626(d). Plaintiff, however, filed an amended complaint of similar import on October 9, 1985, more than 60 days after the filing of her charge. We have ruled that the above 60 day provision along with 29 U.S.C. Sec. 633(b) comprise "substantive limitations on the rights of plaintiffs, ... are analogous to statutes of limitations ... [and] ADEA's filing and deferral provisions specify a time before which no action may be brought." Whitfield v. City of Knoxville, 756 F.2d 455, 461 (6th Cir.1985). See also Vance v. Whirlpool Corp., 707 F.2d 483, 487 (4th Cir.1983), cert. denied, 465 U.S. 1102, 102 S.Ct. 1600, 80 L.Ed.2d 130 and 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 873 (1984) ("Congress intended conciliation efforts under Sec. 626(d) to be a strict condition precedent to the initiation of any litigation in federal courts," and "an absolute period of abstention by the federal judiciary.") The contemporaneous filing of the original action together with the ADEA charge was clearly barred by Sec. 626(d). There is a serious question as to whether plaintiff cleared this ADEA hurdle by later filing, after 60 days had expired, a similar amended complaint. The district court and the majority have not addressed this jurisdictional problem, which may be a basis for dismissal.
 
 
 14
 Plaintiff's application for disability retirement was denied under the following language of Ohio Rev.Code Sec. 145.35:
 
 
 15
 Application for disability retirement may be made by a member or by a person acting in his behalf, or by the member's employer provided the member has at least five years of total service credit and has not attained age sixty and is not receiving disability benefits under any other Ohio state or municipal retirement program.
 
 
 16
 (Emphasis added.)
 
 
 17
 As observed by the district court, the defendants' disability retirement plan "provides that a retirant shall receive a retirement benefit in an annual amount no less than thirty percent of the retirant's final average salary. See Ohio Rev.Code Sec. 145.36." 631 F.Supp. at 1202. ADEA Sec. 623(a)(1) precludes discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." The district court concluded that defendants' retirement plan had a "disparate impact" upon individuals such as plaintiff despite its finding that there was no "ill will" directed towards plaintiff "or anyone in the protected group," and despite its observation that "at first glance, the plan appears to be eminently just." Id. at 1202. The district court conceded that such disparate impact occurred only in the situation where one sixty years or older had not accummulated sufficient "voluntary" retirement benefits by reason of length of service to attain thirty percent of final salary.
 
 
 18
 The district court also concluded that the exception under 29 U.S.C. Sec. 623(f)(2)[2] did not apply. Giving "great deference" to EEOC guidelines, including 29 C.F.R. 860.120(f)(1)(iii),[3] the court held that because the plan denied "long term disability benefits on the basis of age," defendants could not prevail. Id. at 1203. Defendants' argument that its plan afforded a "legitimate retirement option," and was therefore exempted, was not specifically addressed by the district court because "even if the benefit package merely permits an age-based reduction," it was held not to be "the type of plan contemplated by the exemption." Id. at 1204. The district court analogized plaintiff's position of "forced retirement" to that of "constructive discharge" despite plaintiff's concession that she was faced with options to retire or be terminated because of "poor job performance" and "apparent medical problems." Id. at 1204. Also, because the plan did not contain an "express provision for involuntary retirement, at the employer's option", before attaining age seventy, the district court held that defendant employer "did not observe the terms of the plan when it forced plaintiff to retire." Id. at 1205.
 
 
 19
 Applying Title VII criteria to this action, and citing Morelock v. NCR Corporation, 546 F.2d 682 (6th Cir.1976) and Tipler v. E.I. duPont deNemours & Co., 443 F.2d 125, 131 (6th Cir.1971), the district court held that PERS was an employer within the meaning of the act, although not one "in conventional terms ... because it controls some aspects of plaintiff's compensation ... and privileges of employment." Id. at 1206. Both defendants appeal the consequent grant of summary judgment to plaintiff, although PERS did not pursue on appeal the question of its employer status under ADEA.
 
 
 20
 Other courts have recently considered the interesting questions presented in this appeal. See EEOC v. State of Maine and Maine State Retirement System, 823 F.2d 542 (1st Cir.1987) (affirming without opinion the district court's dismissal of an ADEA claim where members of the plan, state employees, were similarly restricted from retirement disability benefits unless permanently disabled before reaching age sixty, see EEOC v. State of Maine, et al., 644 F.Supp. 223 (D.Me.1986)). These decisions in the State of Maine case were not available to Judge Speigel whose opinion pre-dated them. See also Foster v. Board of Trustees of the Maine Retirement System, No. CV-86-24 (Maine Super.Ct. Aug. 6, 1986).
 
 
 21
 A similar result was reached in a case involving like challenge to a group life insurance program which provided disability benefits only to employees who became disabled prior to reaching age sixty. See EEOC v. Cargill, Inc., No. 81-4193 (D.Kan. Oct. 12, 1984), appeal docketed, No. 84-2692 (10th Cir. Dec. 10, 1984). In Cargill, District Judge Saffels considered amended Sec. 623(f)(2) of ADEA in light of its legislative history and concluded that the plan at issue was not a "subterfuge" and was bona fide despite the fact that Cargill's plan had been amended after the passage of ADEA, but not in respect to the disability feature. (A similar contention is made by Betts that defendants had amended the plan in question after ADEA became effective). The district court in Cargill granted defendant summary judgment holding that the provision in question "was instituted in good-faith prior to the passage of ADEA."[4] See also International Bhd. of Elec. Workers v. Union Elec. Co., 585 F.Supp. 261 (W.D.Mo.1984), aff'd 761 F.2d 1257 (8th Cir.1985) and Alford v. City of Lubbock, Texas, 664 F.2d 1263 (5th Cir.), cert. denied, 456 U.S. 975, 102 S.Ct. 2239, 72 L.Ed.2d 848 (1982) for the proposition that a plan, adopted before ADEA came into effect, which might seem on its face to discriminate against older employees was deemed not to be a subterfuge within the meaning of Sec. 623(f)(2) citing United Air Lines, Inc. v. McMann, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977). The majority does not address these cases dealing with this statutory provision.
 
 
 22
 No disparate treatment nor intentional discrimination on the part of defendants has been demonstrated in this case.[5] The court concluded rather that "defendants' disability retirement plan has a disparate impact upon individuals in the protected age group." 631 F.Supp. at 1202. The district court did note that the purpose and effect of the plan was to deny "benefits to certain employees because they are sixty years of age or older." Id. at 1202, citing EEOC v. Borden's, Inc., 724 F.2d 1390 (9th Cir.1984). Borden's involved a plant closing and whether certain employees fifty-five or older were discriminatorily denied severance pay under ADEA. Two questions were presented, the first "whether Borden's policy of denying severance pay to employees eligible for retirement" violated ADEA, and the second, "whether Borden's severance pay policy qualifies for the 'bona fide employee benefit plan' exception under ... 29 U.S.C. Sec. 623(f)(2)." Borden's, 724 F.2d at 1392. The Borden's court found disparate treatment in addition to affirming the district court's disparate impact analysis because "Borden's purposefully drafted its severance pay policy," 724 F.2d at 1393, and held that there was no further need to show a discriminatory animus, citing other Ninth Circuit decisions. Such a holding necessarily examines the impact of a plan upon a particular employee or group of employees of a certain age, and implies a discriminatory animus or intent from the adoption of language in a plan that sets forth eligibility for severance benefits based upon age or length of service. The Borden's court acknowledged that the retirement benefits afforded the claimants were of greater value than the severance pay which was granted to employees who were not entitled, because of their younger age, to retirement benefits. The plant closing in Borden's brought about a forced retirement or termination of all employees there situated at the time of closure. That economic factors may have motivated the actions of the employer and its plan policies were deemed immaterial "since Borden is not arguing that its policy was economically necessary", id. at 1394. The other basis for decision in Borden's was that the "severance pay policy" in question was "not a 'plan' " within the meaning of Sec. 623(f)(2), because it was a "one-time, ad hoc cash payment." Id. at 1395, 1396. I find Borden's rationale unpersuasive, and conclude that it does not apply to the very different set of circumstances involved in this case where the policy at issue is clearly that involved in an ongoing plan, not just a "one-shot, ad hoc" action outside the "meaning of Sec. 623(f)(2)" as found in Borden's.
 
 
 23
 The district court concluded that the plan in question did not qualify for the Sec. 623(f)(2), exemption because it did not meet certain of the following required criteria which it found must be established:
 
 
 24
 (1) it must be the sort of "plan" covered by the exemption;
 
 
 25
 (2) it must be "bona fide," which means that it exists and pays substantial benefits;
 
 
 26
 (3) the defendants' act must be in observance of its plan;
 
 
 27
 (4) the plan must not be a subterfuge to evade the purposes of the act.
 
 
 28
 631 F.Supp. at 1203. The district court found the plan to be a bona fide one. It was a "bona fide employee benefit plan," of the kind defined in 29 U.S.C. Sec. 623(f)(2).
 
 
 29
 However, the district court found that the action taken with regard to Betts was akin to a constructive discharge and that this action ("involuntary retirement") was not a part of the terms of the plan, thus defendants had not "observed" the plan, another of the four criteria.
 
 
 30
 It is clear, however, that Betts was not rendering satisfactory service in the several positions in which she had been placed during her approximate five years of service. She knew that she faced the potentiality of a forced medical leave under the terms of her employment and the established policy of the defendant employer. She was given an option, on the other hand, under the plan "to voluntarily retire and continue to have medical benefits." See Stipulation # 10. Betts had ten days to make a decision after being furnished information about the options available to her. Her daughter was also fully advised about the options under the plan. It was further stipulated that age was not a factor in the decision about requiring a medical examination and the potentiality of a forced medical retirement. The constructive discharge analogy is inappropriate as herein pointed out.
 
 
 31
 The fact that a "forced" medical retirement might have been one option available to Betts, due not to her age but rather her condition of health, and that another retirement option was available to her which she voluntarily chose in which the amount of benefits depended primarily upon length of service, is the significant consideration. I would find that the retirement involved in this case was a voluntary one.
 
 
 32
 Even if there were found a discriminatory impact upon Betts, a constructive discharge analogy is simply not appropriate in this case. This is not a case of difficult, unpleasant or intolerable working conditions being imposed upon plaintiff. Held v. Gulf Oil Co., 684 F.2d 427, 432 (6th Cir.1982); Williams v. Caterpillar Tractor Co., 770 F.2d 47 (6th Cir.1985); Geisler v. Folsom, 735 F.2d 991 (6th Cir.1984).
 
 
 33
 The Board's actions as an employer did not constitute an equivalent to a "constructive discharge" of Betts; its actions were "in observance of its plan." The district court's contrary conclusion was in my view erroneous. Therefore, I would conclude that defendants did meet the criterion of observing, and not departing from, the terms of its plan.
 
 
 34
 For the reasons stated in the Cargill and Maine cases, and because the plan, when adopted and as implemented, was bona fide and not a "cover" or a scheme to discriminate by reason of age against employees in the position of plaintiff, I would further conclude that it was not a "subterfuge to evade the purposes" of ADEA. The definition of "subterfuge," in Sec. 626(f)(2), is a "scheme, plan, stratagem, or artifice of evasion" as set out in United Air Lines Inc. v. McMann, 434 U.S. at 203, 98 S.Ct. at 450. Since defendants' plan was adopted long before ADEA became law, it was not a subterfuge to evade old age discrimination. The third of the criteria was met in that respect.
 
 
 35
 The final criterion necessary for a plan to come within the exemption of 29 U.S.C. Sec. 623(f)(2) is whether this was the "sort of 'plan' covered by the exemption." 631 F.Supp. at 1203. Borden's, a principal authority relied upon by the district court, which considered a "one shot" severance pay arrangement, has been distinguished. Another principal authority cited by the district court in finding the plan in question not to be the "sort" intended by Sec. 623(f)(2) is EEOC v. Westinghouse Elec. Corp., 725 F.2d 211 (3d Cir.1983), cert. denied, 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984). In Westinghouse, the court concluded that the layoff income benefit denied to workers at least 55 years of age was "functionally independent of the Pension Plan," because "[t]he mere fact that benefits available to employees under the Pension Plan were to be considered when determining eligibility for LIB, however, does not merge the two plans into a single 'coordinated benefit plan.' EEOC v. Borden's Inc., 551 F.Supp. 1095, 1099 (D.Ariz [1982] appeal docketed, No. 83-1701 (9th Cir. Feb. 17, 1983)." 725 F.2d at 225. Westinghouse is also distinguishable. In the instant case, there was a coordinated plan and policy tied to a determination of benefits which a medically disabled worker might seek. The amount of the benefit in this case was essentially tied to an employee's length of service with the employer; it obviously sought to encourage long term employment, and it was not designed to discriminate against the hiring of an older worker, as evidenced by the defendant's hiring of Betts at age 55. Defendants' retirement benefit plan is the sort of plan contemplated by 29 U.S.C. Sec. 623(f)(2), contrary to the conclusion of the district court. See Brennan v. Taft Broadcasting Co., 500 F.2d 212 (5th Cir.1974). Alford v. City of Lubbock, Texas, 664 F.2d 1263 (5th Cir.), cert. denied, 456 U.S. 975, 102 S.Ct. 2239, 72 L.Ed.2d 848 (1982) is not to the contrary because withholding of older employees' accumulated and accrued 90-day sick pay benefits is not comparable to the disability retirement plan and policy here involved.
 
 
 36
 EEOC and the district court find support for finding a violation of ADEA because of 29 C.F.R. 860.120(a)(1) and 29 C.F.R. 860.120(f)(1)(iii). Their position is that the limitation imposed upon disability retirement benefits under the plan "is not justified by significant cost considerations and therefore ... is not the type of plan contemplated by the [Sec. 623(f)(2) ] exemption.". 631 F.Supp. at 1204.
 
 
 37
 The two regulations make reference to "significant cost considerations" in order to justify "age-based reductions in employee benefits plans" or denying benefits to "employees who are disabled at older ages." The statutory exemption itself, 29 U.S.C. Sec. 623(f)(2) sets out, in essence, only that there be a "bona fide seniority system or any bona fide employee benefit plan ... not a subterfuge to evade the purpose of [the Act]" and that such plan not "require or permit ... involuntary retirement ... because of ... age." Under the statute the plan at issue is bona fide and not a subterfuge set up to evade ADEA. The plan did not require or make reference to age-based involuntary retirement; rather Betts was afforded a choice or option under the plan and the policy of defendants, and her benefits were less than others because of her comparative short length of employment service rather than age per se. Compare the plan in TWA v. Thurston, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). The plan in question did not, unlike the TWA plan, permit defendants involuntarily to retire Betts. It did permit a medical layoff if her state of health was insufficient to allow her to work satisfactorily, subject to medical treatment or possible curative effect of time, with right of reinstatement. The plan did not involve involuntary retirement as contended by Betts.
 
 
 38
 In sum, the plan meets the requirements of Sec. 623(f)(2), because it is bona fide, not a subterfuge to evade ADEA, and does not involve the forced retirement of Betts, as was the situation involved in EEOC v. Chrysler Corp., 733 F.2d 1183, reh'g denied, 738 F.2d 167 (6th Cir.1984), another case relied upon by plaintiff. In Chrysler, forced retirees were not permitted to have the option available to younger employees (under 55 years old) of "layoff status." Chrysler held that forced retirement, imposed on older employees only, with no other option available, by reason of "economic necessity," constituted a violation of ADEA under the facts of that case. Chrysler involved employees with at least ten years of service. As pointed out by defendant PERS, an age and service retirant under Ohio law is granted the option of quitting retirement and returning to service with any public employer in Ohio, including, but not limited to defendant employer. See Ohio Rev.Code Sec. 145.381. Defendants therefore, unlike the Chrysler and TWA cases, could not force Betts into permanent retirement since, under Ohio law, she could be reemployed by other State of Ohio agencies.
 
 
 39
 I conclude that neither regulation relied upon by the district court and by Betts is in accord with statutory purpose and adds a dimension, economic cost justification, not in the statute. I agree, therefore, with EEOC v. State of Maine, supra, and with EEOC v. Cargill, that a plan of this type does come within the exemption of 29 U.S.C. Sec. 623(f)(2), and, therefore, does not violate ADEA. This plan falls within this plain statutory exemption language without the need to analyze legislative history.[6]
 
 
 40
 Since I conclude that the plan in question does not constitute a violation of ADEA, I would set aside any award of attorney fees to Betts' counsel.
 
 
 41
 I would therefore REVERSE the decision of the district court for the reasons indicated.
 
 
 
 [1]
 Ohio Revised Code Sec. 145.35 provides:
 Application for disability retirement may be made by a member or by a person acting in his behalf, or by the member's employer provided the member has at least five years of total service credit and has not attained age sixty and is not receiving disability benefits under any other Ohio state or municipal retirement programs. (Emphasis added.)
 
 
 [2]
 Section 623(f)(2) now provides:
 It shall not be unlawful for an employer ...
 (2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefits plan shall excuse the failure to hire any individual, and no such seniority system or employee benefits plan shall require or permit the involuntary retirement of any individual specified by section 631(a) of this title because of the age of such individual;....
 
 
 [3]
 29 C.F.R. 860.120(a)(1) provides:
 The legislative history of this provision indicates that its purpose is to permit age-based reductions in employee benefits plans where such reductions are justified by significant cost considerations. Accordingly, [29 U.S.C. Sec. 623(f)(2) ] does not apply, for example, to paid vacations and uninsured paid sick leave, since reductions in these benefits would not be justified significant cost considerations. Where employee benefit plans do meet the criteria in [29 U.S.C. Sec. 623(f)(2) ], benefit levels for older workers may be reduced to the extent necessary to achieve approximate equivalency in cost for older and younger workers. A benefit plan will be considered in compliance with the statute where the actual amount of payment made, or cost incurred, in behalf of an older worker is equal to that made or incurred in behalf of a younger worker even though the older worker may thereby receive a lesser amount of benefits or insurance coverage.
 
 
 [29]
 C.F.R. 860.120(f)(1)(iii) provides:
 [W]here the employees who are disabled at younger ages are entitled to long-term disability benefits, there is no cost based justification for denying such benefits altogether, on the basis of age, to employees who are disabled at older ages. It is not unlawful to cut off long-term disability benefits and coverage on the basis of some non-age factor, such as recovery from disability. Nor is it unlawful to terminate benefits or coverage, on the basis of age, at age 70. Reductions on the basis of age before age 70 in the level or duration of benefits available for disability are justifiable only on the basis of age-related cost considerations as set forth elsewhere in this section.
 
 
 [1]
 29 C.F.R. 860.120(a)(1) provides in part:
 The legislative history of this provision indicates that its purpose is to permit age-based reductions in employee benefits plans where such reductions are justified by significant cost considerations. Accordingly, section 4(f)(2) does not apply, for example, to paid vacations and uninsured paid sick leave, since reductions in these benefits would not be justified by significant cost considerations. Where employee benefit plans do meet the criteria in section 4(f)(2), benefit levels for older workers may be reduced to the extent necessary to achieve approximate equivalency in cost for older and younger workers.
 
 
 [2]
 29 U.S.C. Sec. 623(f)(2) provides, in part:
 It shall not be unlawful for an employer ...
 (2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual, and no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual specified by section 631(a) of this title because of the age of such individual; ....
 
 
 [3]
 29 C.F.R. 860.120(f)(1)(iii) provides in part:
 [W]here employees who are disabled at younger ages are entitled to long-term disability benefits, there is no cost based justification for denying such benefits altogether, on the basis of age, to employees who are disabled at older ages. It is not unlawful to cut off long-term disability benefits and coverage on the basis of some non-age factor, such as recovery from disability. Nor is it unlawful to terminate benefits or coverage, on the basis of age, at age 70. Reductions on the basis of age before age 70 in the level or duration of benefits available for disability are justifiable only on the basis of age-related cost considerations as set forth elsewhere in this section....
 
 
 [4]
 Cargill has been appealed to the Tenth Circuit Court of Appeals and oral argument has been heard. No decision has yet been rendered
 
 
 [5]
 The district judge noted no "ill will" by reason of age demonstrated; that the plan "preserved career opportunities" and in some respects "appears to be eminently just." 631 F.Supp. at 1202
 
 
 [6]
 If, however, one were to examine the legislative history of the 1978 amendment, reflected in Sec. 623(f)(2) as set out in note 2, supra, one would find that the purpose was to preclude involuntary retirement on account of age. To that extent Congress intended to overrule United Air Lines, Inc. v. McMann, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977)