**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff–Appellant,**

v.

**CARGILL, INC., Defendant–Appellee.**

No. 84–2692.

United States Court of Appeals, Tenth Circuit.

Aug. 26, 1988.

Mark S. Flynn, E.E.O.C., Washington, D.C., (Johnny J. Butler, Acting Gen. Counsel, Gwendolyn Young Reams, Acting Associate Gen. Counsel, Vella M. Fink, Asst. Gen. Counsel, E.E.O.C., Washington, D.C., were also on the brief) for plaintiff-appellant

David J. Waxse, Shook, Hardy & Bacon, Overland Park, Kan. (Carol F. Fowler, Shook, Hardy & Bacon, Kansas City, Mo. and H. Jed Hepworth, Cargill, Inc., Minneapolis, Minn. (of counsel), were also on the brief), for defendant-appellee

Alfred Miller, Steven S. Honigman and Peter N. Greenwald of Miller, Singer & Raives, P.C., New York City, filed a brief amicus curiae for the American Ass'n of Retired Persons.

Before HOLLOWAY, Chief Judge, ANDERSON, Circuit Judge, and CHILSON, District Judge *.

HOLLOWAY, Chief Judge.

The Equal Employment Opportunity Commission (EEOC) brought this suit against Cargill, Inc., alleging violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., and seeking injunctive and other relief. Specifically the EEOC claimed that Cargill maintained a group life insurance program that unlawfully discriminated by denying benefits to employees age 65 and over. Both parties moved for summary judgment. The district court granted Cargill's motion and denied the EEOC's motion, holding that Cargill's policy came within the exception in § 4(f)(2) of the Act, 29 U.S.C. § 623(f)(2). The EEOC appeals, and the sole issue is whether Cargill's insurance program violates the ADEA. We affirm.

* The Honorable Hatfield Chilson, United States District Judge for the District of Colorado, sitting by designation.

## I

The critical facts are undisputed. Cargill maintains a "Group Life Insurance Program" which provides several life and disability insurance benefits to Cargill employees. Under Cargill's program, an employee has a life insurance death benefit in a sum certain, payable to a designated beneficiary upon the employee's death. If an employee under age 60 becomes permanently and totally disabled, he or she is entitled to receive a benefit equal to the death benefit proceeds, paid out in monthly installments over a period of five or ten years. However, employees age 60 and over are treated differently; they are not eligible to receive this disability benefit. Cargill's program was instituted 13 years prior to the passage of the ADEA in 1967 and has been amended on several occasions since that time.[1]

In its complaint the EEOC alleged that Cargill's plan violated the ADEA because it treated employees age 60 and over differently than younger employees. Cargill answered that its plan was instituted before the ADEA was enacted and was therefore exempt from the Act. In granting summary judgment to Cargill, the district court relied on *United Airlines, Inc. v. McMann,* 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977), which held that forced retirement plans predating the ADEA were per se exempt from the Act. The EEOC contends that Congress has overruled *McMann* and that under current ADEA provisions, Cargill was not entitled to summary judgment because evidence was not presented to justify the discriminatory effects of the Cargill program.

## II

We review the grant of summary judgment *de novo. EEOC v. County of Orange,* 837 F.2d 420, 421 (9th Cir.1988). Viewing the record in the light most favorable to the non-moving party, we must determine whether there are any genuine issues of material fact and whether the movant was entitled to judgment as a matter of law so as to justify a summary judgment under Fed.R.Civ.P. 56.

The ADEA broadly prohibits arbitrary age-based discrimination in the workplace. The Act declares it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). One exception to this general prohibition is that an employer may "observe the terms of ... any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter ..." 29 U.S.C. § 623(f)(2).

On its face, Cargill's life insurance program appears to violate the ADEA's general prohibition. However, Cargill's program is exempt from the ADEA if it meets four criteria: 1) it must be the type of "plan" covered by the section; 2) it must be "bona fide" in that it exists and pays substantial benefits; 3) Cargill's action must be in observance of the plan; and 4) the plan must not be a subterfuge to evade the purposes of the Act. *County of Orange,* 837 F.2d at 421–22.[2] Only the fourth criterion is in dispute here—whether the program is a subterfuge to evade the purposes of the ADEA.

In dealing with this question, the Fifth Circuit expressed the view that because a plan was effectuated before enactment of the ADEA, any notion that the plan was adopted as a subterfuge for evasion was eliminated. *Brennan v. Taft Broadcasting Co.,* 500 F.2d 212, 215 (5th Cir.1974). The Fourth Circuit took the position that to avail itself of the exemption of § 4(f)(2) for a pre-Act plan with an involuntary retire-

---

**1.** Cargill's program was instituted in 1954. A 1981 amendment eliminated the disability benefit from the program.

**2.** Cargill bears the burden of establishing its defense that its program falls within the 4(f)(2)

exception. *See EEOC v. Westinghouse Elec. Corp.,* 725 F.2d 211, 223 (3d Cir.1983), *cert. denied,* 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984).

ment provision, the employer had to demonstrate the plan was not being maintained as a subterfuge. *McMann v. United Airlines, Inc.*, 542 F.2d 217, 221 (4th Cir.1976), *rev'd*, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977). The grounds of the Supreme Court's reversal are discussed below.

The histories of both *McMann* and the subsequent statutory amendments are important. In 1977 Congress was considering an amendment to the 4(f)(2) exception to the ADEA. The legislative comments accompanying the proposed amendment indicate Congress was aware of the inter-circuit conflict, and approved of the Fourth Circuit's position that § 4(f)(2) did not permit mandatory retirement pursuant to a collective bargaining agreement or pension plan. The Report also expressed disagreement with the *Brennan* opinion's view that a pre-Act plan could not be a subterfuge if operative before the effective date of the Act. S.Rep. No. 95–493, 95th Cong., 2d Sess. 10, *reprinted in* [1978] U.S.Code Cong. & Admin.News 504, 513.

While the amendment to Section 4(f)(2) was still being considered, the Supreme Court resolved the inter-circuit conflict by reversing the Fourth Circuit's *McMann* decision. *United Airlines, Inc. v. McMann,* 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977). The Court held: 1) § 4(f)(2) permitted involuntary retirement before age 65 under a bona fide employee benefit plan, *id.* 434 U.S. at 198, 98 S.Ct. at 448; and 2) a plan established prior to the enactment of the ADEA could not constitute a subterfuge, *id.* 434 U.S. at 203, 98 S.Ct. at 450.

In reversing the Fourth Circuit's *McMann* decision, the Court stated:

"... [W]e find nothing to indicate Congress intended wholesale invalidation of retirement plans instituted in good faith before [the passage of the Act], or intended to require employers to bear the burden of showing a business or economic purpose to justify bona fide pre-existing plans as the Fourth Circuit concluded.... [A] plan established in 1941, if bona fide, as is conceded here, cannot be a subterfuge to evade an Act passed 26 years later.... We reject any such *per*

*se* rule requiring an employer to show an economic or business purpose in order to satisfy the subterfuge language of the Act."

434 U.S. at 203, 98 S.Ct. at 450.

A few months after the Court decided *McMann,* Congress passed the proposed amendment § 4(f)(2). The amendment added the language underlined below and § 4(f)(2) now provides that an employer may

observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual, *and no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual specified by section 631(a) of this title because of the age of such individual....*

92 Stat. 189 (approved April 6, 1978), 29 U.S.C. § 623(f)(2) (1978). The Conference Committee Report accompanying the 1978 amendment indicated legislative dissatisfaction with the Supreme Court's *McMann* opinion by this statement:

In *McMann v. United Airlines,* [434 U.S. 192] 98 S.Ct. 244 [54 L.Ed.2d 402] (1977), the Supreme Court held to the contrary, reversing a decision by the Fourth Circuit Court of Appeals, 542 F.2d 217 (1976). The conferees specifically disagree with the Supreme Court's holding and reasoning in that case. Plan provisions in effect prior to the date of enactment are not exempt under section 4(2)(f) by virtue of the fact they antedate the act or these amendments.

H.Conf.Rep. No. 95–950, 95th Cong., 2nd Sess. 8, *reprinted in* [1978] U.S.Code Cong. & Admin.News, 528, 529.

Some courts have said that the passage of the amendment to § 4(f)(2) overruled *McMann's* holding regarding forced retirement plans. *See EEOC v. Chrysler Corp.,* 733 F.2d 1183, 1185 (6th Cir.1984); *EEOC v. Borden's Inc.,* 724 F.2d 1390, 1395 n. 4 (9th Cir.1984); *EEOC v. Maine,* 644

F.Supp. 223, 226 (D.Me.1986), *aff'd mem.,* 823 F.2d 542 (1st Cir.1987). However, the EEOC argues that the amendment overruled *McMann* in its entirety, including its view on the interpretation of the subterfuge provision in § 4(f)(2). The EEOC therefore asserts that Cargill's program is not exempt from the ADEA and that Cargill, as a party seeking to invoke the exception to the general provision, should have been required to present economic or other evidence to show that its plan was legitimate and not a subterfuge.

■ We disagree with the EEOC's basic premise that the 1978 amendment overruled *McMann's* interpretation of the subterfuge provision in § 4(f)(2). We must agree with the Commission that the concluding sentence quoted above from the Conference Committee Report lends support to the Commission's position on the construction of § 4(f)(2). Moreover, legislative history is not to be ignored even though we feel "the legislative intent is clearly manifested in the language of the statute itself." *Miller v. Commissioner,* 836 F.2d 1274, 1282 (10th Cir.1988) (quoting *Train v. Colorado Public Interest Research Group, Inc.,* 426 U.S. 1, 9–10, 96 S.Ct. 1938, 1942, 48 L.Ed.2d 434 (1976)). Nevertheless the language of the statute must be the primary source of any interpretation, *Miller,* 836 F.2d at 1283, and here the 1978 amendment of § 4(f)(2) was specific in addressing *only* involuntary retirement provisions.[3] Hence we are not persuaded that the broad language in the sentence of the Conference Committee Report supports the result urged by the Commission.

Three cases have considered and rejected the EEOC's position. *EEOC v. County of Orange,* 837 F.2d 420, 422 (9th Cir.1988); *EEOC v. Maine,* 644 F.Supp. 223, 226–27

(D.Me.1986), *aff'd mem.,* 823 F.2d 542 (1st Cir.1987); *International Bhd. of Elec. Workers, Local 1439 v. Union Elec. Co.,* 585 F.Supp. 261, 264 (E.D.Mo.1984), *aff'd,* 761 F.2d 1257 (8th Cir.1985). We are persuaded by the Ninth Circuit's reasoning in *County of Orange:*

> Despite this broad language in the legislative history, the 1978 amendment to section 4(2)(f) only dealt with involuntary retirement provisions. Congress could have easily invalidated *McMann* entirely by altering the definition of subterfuge or by adding a requirement that discriminatory plans be justified by cost considerations. We presume that Congress adopted *McMann's* definition when it reenacted 4(2)(f) without amending the subterfuge language. *Accord Lorillard v. Pons,* 434 U.S. 575, 581, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978); *Ward v. Commissioner,* 784 F.2d 1424, 1430 (9th Cir. 1986).

837 F.2d at 422; *see EEOC v. Maine,* 644 F.Supp. at 226; *International Bhd.,* 585 F.Supp. at 264; *Crosland v. Charlotte Eye, Ear and Throat Hosp.,* 686 F.2d 208, 213 (4th Cir.1982) (dictum). We agree with these views that *McMann's* interpretation of the subterfuge provision in § 4(f)(2) remains valid and that a benefit plan instituted long before the passage of the ADEA in 1967 cannot be a subterfuge to evade the Act itself.

### III

■ It is undisputed that Cargill instituted its life insurance program over a decade before the initial enactment of the ADEA. Under *McMann,* the plan comes within the § 4(f)(2) exception and Cargill was not required to present evidence justifying the different treatment of older employees.[4] The district court correctly granted sum-

---

3. In contrast, *In re Compos,* 768 F.2d 1155, 1157 (10th Cir.1985), is a case in which subsequent statutory language and consistent legislative history show an intent to overrule a "looser standard" of statutory interpretation in a prior Supreme Court opinion. We do not find that clear pattern here where the statutory change dealt only with involuntary retirement provisions.

4. Although Cargill's plan has been amended since 1967, the EEOC does not claim these amendments relate to the challenged provisions. The amendments do not convert the plan into a subterfuge. *See County of Orange,* 837 F.2d at 423; *accord EEOC v. Home Ins. Co.,* 672 F.2d 252, 259 (2d Cir.1982) (employer cannot rely on the fact that its plan predated the ADEA when discriminatory provisions were adopted after the ADEA was enacted).

mary judgment for Cargill and the judgment is

AFFIRMED.