June M. BETTS, Plaintiff–Appellee,

v.

HAMILTON COUNTY BOARD OF MENTAL RETARDATION AND DEVELOPMENTAL DISABILITIES and Public Employees Retirement System of Ohio, Defendants–Appellants.

Nos. 86–3676, 86–4034.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 7, 1989.

Decided March 26, 1990.

Andrew I. Sutter (argued) and Nancy J. Miller, Asst. Attys. Gen., Columbus, Ohio, for Ohio Public Employment Retirement System.

Arthur M. Ney, Jr. and Thomas E. Deye, Lead Counsel, Asst. Pros. Attys., Cincinna-

ti, Ohio, for Hamilton County Bd. of Mental Retardation and Developmental Disabilities.

Robert F. Laufman (argued), Cincinnati, Ohio, for plaintiff-appellee.

Alfred Miller, Steven S. Honigman, Peter N. Greenwald and Nancy K. Eisner, New York City, for amicus curiae American Ass'n of Retired Persons in support of appellee.

Susan E. Rees, E.E.O.C., Gwen Young Reams, Johnny J. Butler, and Mark S. Flynn, Washington, D.C., for amicus curiae E.E.O.C. in support of appellee.

Carolyn L. Wheeler (argued), Washington, D.C., for amici curiae in support of appellee.

Before MERRITT, Chief Judge, and MARTIN and WELLFORD, Circuit Judges.

MERRITT, Chief Judge.

This federal age discrimination case has a complicated history and is now before this Court upon remand from the Supreme Court. *Public Employees Retirement System of Ohio v. Betts,* —— U.S. ——, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989), *reversing,* 848 F.2d 692 (6th Cir.1988), *affirming,* 631 F.Supp. 1198 (S.D. Ohio 1986). We conclude that the defendant subjected plaintiff to "involuntary retirement" in violation of §§ 4(a)(1) and 4(f)(2) of the Age Discrimination in Employment Act. 29 U.S.C. §§ 623(a)(1), 623(f)(2).

Section 4(a)(1) makes it unlawful for an employer "to discharge" an employee or "otherwise discriminate" on the basis of age in respect to the employee's "compensation, terms, conditions or privileges of employment," including any actions which "tend to deprive any individual of employment opportunities or otherwise adversely affect his status." 29 U.S.C. § 623(a).

Congress created a partial exception to this general standard for bona fide employee benefit plans. Section 4(f)(2) allows age discrimination by an employer in order "to observe the terms of ... any bona fide employee benefit plan such as a retirement ... plan ... except that ... no such ... plan shall require or permit the involuntary retirement of any individual ... because of age...." 29 U.S.C. § 623(f)(2).[1] The Supreme Court has now held that the Ohio Retirement Plan is the type of "bona fide" plan subject to the § 4(f)(2) partial exemption, and we must now decide whether Betts was "involuntarily retired," thereby making the exemption inapplicable.

Betts worked as a speech pathologist for the Hamilton County Board of Mental Retardation and Developmental Disabilities for five years. After Betts became ill, the Board determined that she could no longer perform her job. In 1985, when Betts was 61 years of age, her supervisor told her that under Ohio law she had only two possible alternatives: an unpaid medical leave, which would not entitle her to any benefits, or a length-of-service retirement, which would entitle her to $158.50 a month. Ohio Rev. Code §§ 145.32 and 145.301(C). Had she been under 60, the Ohio plan would have given Betts a third option: disability benefits with the possibility of being recalled if her condition sufficiently improved. Ohio Rev. Code § 145.39. Under this third option she would have been entitled to $355.02 a month. As a disability retiree, rather than a length-of-service retiree, Betts would have remained an employee of Hamilton County and would have been entitled to return to work had her condition improved. She was denied this alternative because of her age. Faced with the two choices put to her, she chose the length-of-service retirement.

---

1. Section 623(f)(2) provides in full:
   It shall not be unlawful for an employer, employment agency, or labor organization—
   (2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a *retirement, pension,* or *insurance* plan, which is not a subterfuge to evade the purposes of this chapter, except that

   no such employee benefit plan shall excuse the failure to hire any individual, no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual specified by section 631(a) of this title because of the age of such individual....
   29 U.S.C. § 623(f)(2).

■ The Supreme Court remanded to us the issue of "involuntary retirement" under § 4(f)(2) using the following language:

> As a result of the 1978 amendments, § 4(f)(2) cannot be used to justify forced retirement on account of age. Appellee contends, and the District Court found, that appellee was forced to retire under the terms of PERS' plan, and that as a result § 4(f)(2) is unavailable to PERS. The Court of Appeals did not address this question, and we express no opinion on it, leaving its resolution to that court on remand.

*Betts*, 109 S.Ct. at 2860 n. 2. More specifically, the question presented is: When an employer forces an employee to retire because of job performance or some other legitimate reason not based on age, and then forces the employee into a less desirable retirement plan because of age, does the employer's conduct constitute "involuntary retirement ... because of age" in violation of § 4(f)(2)? Or, put another way, when an employer forces terms of retirement on an employee for mixed reasons, one of which is age, does the employer violate the "involuntary retirement" proviso of § 4(f)(2) and make the "bona fide" retirement plan exemption unavailable?

Our decision for the employee in this case is strongly influenced by a decision in the Supreme Court and a prior decision in this Court, both of which we regard as on point. The Supreme Court considered a similar issue of "involuntary retirement" in *Trans World Airlines v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), in which the airline asserted the "bona fide" retirement plan defense. In *Thurston*, TWA had two related retirement policies for pilots:

> (1) For safety reasons, pilots could no longer serve after age 60 but had to retire as pilots, a policy the pilots conceded to be valid as a bona fide occupational qualification under § 4(f)(1).
> (2) Flight engineers could serve beyond age 60, and pilots who became unable to fly could become flight engineers by displacing or "bumping" less senior flight engineers. This "bumping" rule applied, however, only to pilots under age 60.

The Supreme Court held that the § 4(f)(2) "bona fide" retirement plan defense was unavailable because the retired pilots were denied a "privilege of employment"—the right to "bump" into the job of flight engineer—on accout of age. *Thurston*, 469 U.S. at 124, 105 S.Ct. at 623. It concluded that "because captains disqualified for reasons other than age are allowed to 'bump' less senior flight engineers, the mandatory retirement was age-based. Therefore, the 'bona fide seniority system' defense is unavailable to the petitioners." *Id.* As in the present case, the employer had two policies related to retirement, one valid and the other invalid. The initial retirement was valid, as in the present case, but the age-based refusal to allow the employee to participate in a further employment opportunity made the § 4(f)(2) defense unavailable.

■ *Thurston* therefore is on point. Because of their age, some TWA pilots were not entitled to "bumping" privileges. Because of her age, plaintiff was not entitled to disability benefits. Defendant argues that Betts' situation is distinguishable because none of the three options available to her would have been another job as was the case in *Thurston*. The benefits she was denied, however, were at the very least a "privilege of employment" or an "employment opportunity" under § 4(a)(1), if not a job. Moreover, the third option of disability benefits which Betts was not offered is similar to a job since she would have been able to return to work had her condition improved.

This Court's decision in *EEOC v. Chrysler*, 733 F.2d 1183, *reh'g en banc denied*, 738 F.2d 167 (1984), is also on point. In *Chrysler* the company instituted a retirement plan in an attempt to overcome potential insolvency. As a matter of "business necessity," fifty employees over the age of 55 were given retirement benefits under a special early retirement "program." Although these employees were given the same retirement pay as those who had voluntarily accepted early retirement, they

were not given the option of taking "layoff status," thereby allowing return to work on a seniority basis, which had been provided to those under 55 who were laid off.

We held that the plan as instituted constituted "involuntary retirement" making the § 4(f)(2) defense unavailable. The Court rejected Chrysler's argument that because both age and economics were factors in that decision the plan should receive the § 4(f)(2) exemption. *Chrysler*, 733 F.2d at 1185. Because age was an invalid "determining" factor on one term or condition of the retirement plan, specifically the failure to allow return to work on the basis of seniority, the plan violated the ADEA and was not subject to the exemption. *Id.* at 1186.

Like *Thurston*, *Chrysler* is analogous to this case. The *Chrysler* workers, both young and old, were laid off because of "business necessity." But, purely because of their age, older workers were denied the option of layoff status. Betts' situation is similar. She was denied the third option of disability benefits solely because of her age. Thus, similarly situated people under 60 would have been entitled to disability benefits. If Betts had been 59 and had retired because of an illness, she would have been entitled to that third option. This after-retirement discrimination based on age was condemned by the *Chrysler* court. It made the § 4(f)(2) exemption unavailable there, and for the same reason it should be unavailable here.

■ Defendant relies on two cases from the Seventh Circuit to bolster their argument that Betts was not involuntarily retired. Defendant quotes language from *Weihaupt v. American Medical Ass'n*, 874 F.2d 419 (7th Cir.1989): "A discharge based on health is not actionable under the ADEA." *Weihaupt*, 874 F.2d at 425. We have no quarrel with that principle, but Betts' situation is entirely different from the situation in *Weihaupt*. In that case plaintiff was not forced to retire or forced involuntarily into a less desirable retirement program on the basis of age. While it is true that retiring for health reasons is not actionable, Betts is claiming that she

was denied one of the three options available to PERS employees *because of her age*. Even though she retired for health reasons, she was not given the choice of disability benefits solely because of her age. This denial, not her initial retirement, is what makes the § 4(f)(2) defense inapplicable.

Defendant's reliance on language from *Henn v. National Geographic Society*, 819 F.2d 824 (7th Cir.1987), an early retirement case, is also misplaced. The Seventh Circuit held that an inference of age discrimination was not supported when two factors, one neutral, retirement, and one beneficial to the older employee, incentives, were present. *Henn*, 819 F.2d at 828. Betts, an older employee, was not given any choice of incentives. Quite the contrary: she was denied the choice of disability benefits which would have been available to her had she been one year younger.

This decision should not be read to undercut a company's ability to institute early retirement plans or require retirement for reasons of health or job performance. However, we follow the principle established by *Thurston* and *Chrysler* that in administering retirement plans employers may not force older workers involuntarily into less desirable retirement programs on the basis of age. Such coercive conduct constitutes "involuntary retirement" under § 4(f)(2).

Accordingly, the judgment of the District Court is AFFIRMED.

WELLFORD, Circuit Judge, dissenting:

The Supreme Court reversed our prior decision in this difficult case and "remanded for further proceedings consistent" with its opinion. *Public Employees Retirement System of Ohio v. Betts*, — U.S. —, 109 S.Ct. 2854, 2869, 106 L.Ed.2d 134 (1989). The dissenters viewed the majority decision with alarm feeling that it "immunizes virtually all employee benefit programs from liability" under ADEA. 109 S.Ct. at 2869. A majority of our panel, however, does not "immunize," under a § 4(f)(2) exemption,

the employee benefit program in controversy from liability to Betts.[1]

The majority of the panel of this court on remand, moreover, interprets § 4(f)(2) in such a manner as to find in violation of the act the terms of a "bona fide employee benefit plan" of PERS which was not a "subterfuge" to evade its purposes. It construes what appears to the writer to be the voluntary action of a person not physically capable of carrying out the duties of her job to be an "involuntary retirement" by the Ohio Board, thus holding the PERS plan not to be subject to the exemption of § 4(f)(2).

The first question in this case was settled by the Supreme Court in *Betts:* "PERS is entitled to the protection of the § 4(f)(2) exemption unless its plan is 'a subterfuge to evade the purposes of' the Act." 109 S.Ct. at 2860 (footnote omitted). The Court found the plan in this case not to be a subterfuge. It is also true that the Court, at the same time, expressed no opinion on whether or not Betts "was forced to retire under the terms of the PERS plan," and left its resolution to be determined on remand. *Id.* at 2868–69. It seems to me that this remand involves both a factual question and a legal question. To decide whether a person was *forced to retire,* a court must first determine the factual predicates for such a decision. Thus, based on the facts found, a court must then reach a legal conclusion on "involuntary retirement." It may be that the district court is the appropriate tribunal to make that first determination in light of the principles expressed by the Supreme Court. In any event, on remand we must consider a mixed question of fact and of law: was there a forced retirement?

The majority, moreover, mistakenly poses a question which it already answers in the form of the question:

... the question presented is: when an employer *forces terms of retirement* on an employee for mixed reasons, one of which is age, does the employer violate the "involuntary retirement" proviso of § 4(f)(2) ...?

(Emphasis added). The assumption made in the question presented by the majority is that defendant employer *forced* Betts into retirement.[2] But, the proper question is: did the defendant employer force Betts into retiring, or did she retire essentially because her health required her to quit? I submit that, if called upon to answer that question, the facts would clearly indicate the latter: Betts was compelled to resign, not by reason of what the employer did or did not do, not by reason of her age, but by reason of her own health problems.

The only case law authority upon which the district court found that Betts "was forced into retirement because of her age" was *Jacobs v. Martin Sweets Co., Inc.*, 550 F.2d 364 (6th Cir.), *cert. denied*, 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977), and *EEOC v. Chrysler Corp.*, 733 F.2d 1183 (6th Cir.1984). The district court stated that: "[T]he amendment to ADEA ... in essence overruled the Supreme Court's decision in *United Air Lines, Inc. v. McMann*, 434 U.S. 192 [98 S.Ct. 444, 54 L.Ed.2d 402] (1977)...." The latter proposition is clearly in error in light of the Supreme Court decision in *Betts (EEOC v. Chrysler*, also relied upon by the district court, was effectually overruled by *Betts* ). *Jacobs* involved a sex discrimination claim of constructive discharge of an unmarried plaintiff by reason of her pregnancy. Here, again, Jacobs was willing and anxious to continue working, a situation entirely different from Betts. The complaint in *Jacobs*, in contrast to Betts, was that plaintiff was discriminatorily, by reason of her sex, precluded from working—a world

---

**1.** Mr. Justice Marshall, in dissent, stated, moreover, "Henceforth, liability will not attach under the ADEA even if an employer is unable to put forth any justification for denying older workers the benefits younger ones receive...." 109 S.Ct. at 2869.

**2.** This is, as the Supreme Court clearly put it: "Appellee [Betts] contends, and the District Court found, that appellee was *forced to retire.* ..." 109 S.Ct. at 2860 n. 2. (emphasis added). We did not previously address this question, and, of course, we should not *assume* that the district court was correct.

apart from the factual situation in the present controversy.

*Jacobs* was cited by the district court because he found the "situation analogous to constructive discharge," an issue in that case. The basis for constructive discharge, however, in *Jacobs* was the employer's attitude and actions towards the plaintiff because she was unmarried. Ordinarily, where workers were pregnant, "the Company allowed such employees to work as long as they were able, consistent with their health." 550 F.2d 364. The defendants in this case treated plaintiff no differently from others in her same classification who retired because of health.

There is simply no proper analogy between *Jacobs* and this case. *Jacobs* is not authority for the district court's conclusion that there was a "forced retirement" of Betts. The *Chrysler* case, relied upon both by the district court and the majority, is also not a basis for holding that Betts was forced to retire and/or that the Ohio Board or PERS acted in derogation of ADEA with respect to Betts' choice of options available to her by reason of failing health. The district court, therefore, was clearly erroneous in the basis for deciding that Betts was forced to retire.

The majority is also in error in describing the "medical leave" option as providing plaintiff with no "benefits." To the contrary, it would enable plaintiff to maintain her position, or a right to continue employment, if Betts' health improved and permitted her to do so. Although an unlikely prospect, the majority thought that the entitlement "to return to work had her condition improved" an important alternative, an "employment opportunity" considered in the context of an option available to other employees. Thus, the majority is inconsistent in its consideration and treatment of the options made available to Betts, who herself realized that she could no longer work due to her health, and faced the prospect of termination.

The majority's decision that Betts was forced to retire because of age is "strongly influenced" by *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). *Thurston*, however, involved an entirely different issue: whether a pilot over 60 years of age *who was capable and desired to continue working* could be discriminated against and denied that opportunity when other similarly capable and desiring pilots, disqualified for some physical reason from piloting (not age), were permitted to continue working. *Thurston* involved an age discrimination action by an employee which precluded a willing 60 year old (or older) pilot from continuing to work. The instant case, on the other hand, involves the situation in which the employer was, for a considerable period of time, willing to accommodate an employee handicapped by a disability and was willing to allow her to continue to work, taking into account her health, but she became incapable of continuing to work. *Thurston*, then, involves a fundamentally different situation from the one at hand. To compare the retirement in *Thurston* with the Betts retirement is to compare apples and oranges.

The majority discussed the options available to Betts and stated "the third option of disability benefits which Betts was not offered is similar to a job since she would have been able to return to work had her condition improved." [3] The record is clear in this case that Betts could not continue working. Her doctor filed a report, as noted by the district court, that she was *permanently disabled*, and she has never denied this status since her decision to retire. The majority's reference to a "third option" is irrelevant in my view to the extent it takes into account Betts' potential of returning to work. She had an option of undergoing a medical examination, and if found disabled, to take medical leave with the option of returning to her job without the loss of benefits *when she returned*. I disagree with my colleagues that Betts was

**3.** Presumably, the other options offered Betts were a medical leave, which would make her eligible to return when able to do so, but without pay during the interim, or "voluntary retirement," the option chosen by Betts.

denied any "employment opportunity" under the factual circumstances of this case.

Neither do I find *EEOC v. Chrysler Corp.*, 733 F.2d 1183 (6th Cir.1984), relied upon by the majority, to be "analogous," persuasive, or "on point" on the issue before us. Chrysler in that case placed a number of workers on involuntary retirement because of drastic cut-backs in its business. This was a true "forced early retirement" case; plaintiffs over 55 were willing and able to work, but Chrysler, by reason of claimed economic necessity, concededly required them to take early retirement without being offered "layoff" status (with opportunity for future reinstatement) as were other employees. Again, the facts and rationale of *Chrysler* are entirely distinguishable from those in the instant case. Betts was offered the equivalent of layoff—medical leave—with opportunity for reinstatement, but she herself opted for early retirement with pension and retirement benefits, although she had worked for the Ohio Board only five years. In *Chrysler*, this court affirmed the district court decision requiring the employers to place the retired workers on a layoff status because the "loss of future prospects *for work*" was found to be antithetical to the ADEA. 733 F.2d at 1186 (emphasis added). Denial of a work opportunity for those who wanted to work in *Chrysler* is a far cry, in my opinion, from the offer made to Betts who knew she was unable to work and chose to take another option available to her under a plan, a valid plan according to the Supreme Court, not a "subterfuge," when adopted. *Chrysler* forced its employees of a certain age to retire and denied them layoff status. No one *forced* Betts to stop working. *See Betts*, 109 S.Ct. at 2862, 2868 (reaffirming the rule in *United Air Lines, Inc. v. McMann*, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977)). *Chrysler*, moreover, was based on cost factors

and "least-detrimental-alternative means" to accomplish cost reduction in respect to age discrimination allegations. 733 F.2d at 1186. This "cost justification requirement" for retirement plans such as PERS was *expressly rejected* by the Supreme Court in *Betts*. 109 S.Ct. at 2865.[4] *See also EEOC v. Bethlehem Steel Corp.*, 727 F.Supp. 952 (1990).

The majority concedes that Betts "retired for health reasons." Her retirement, like Dr. Weihaupt's resignation in *Weihaupt v. American Medical Association*, 874 F.2d 419 (7th Cir.1989), was due to "serious health problems." *Id.* at 425. I agree with that court's observation, which is consistent with the Supreme Court's decision in *Betts*, that

> a discharge based on his poor health is not actionable under the ADEA. " 'Congress made plain that the age statute was not meant to prohibit employment decisions based on factors that sometimes accompany advancing age, such as declining health or diminished vigor and competence.' " *Holley v. Sanyo Manufacturing, Inc.*, 771 F.2d 1161, 1167 (8th Cir.1985) (quoting *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1016 (1st Cir.1979)).

*Weihaupt*, 874 F.2d at 425. *Weihaupt*, moreover, supports PERS' position in the instant case concerning Betts' claim of "forced" retirement. *Weihaupt* held that proof of *forced* retirement had to be akin to proof of constructive discharge. *Id.* at 425–26. *Henn v. National Geographic Society*, 819 F.2d 824 (7th Cir.) *cert. denied*, 484 U.S. 964, 108 S.Ct. 454, 98 L.Ed.2d 394 (1987), also supports PERS' position in holding that in a case of early retirement, one claiming that it was forced retirement had to establish the equivalent of a constructive discharge. 819 F.2d at 826. As in *Henn*, the employer in this case has shown a "sound business purpose" and the

---

4. *Chrysler* was described in *EEOC v. Cargill, Inc.*, 855 F.2d 682, 685 (10th Cir 1988), as holding that the 1978 amendment to § 4(f)(2) completely overruled *United Airlines, Inc. v. McMann*, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977). In *Betts*, the Supreme Court made it clear that *McMann* was not overruled. To that extent, *Chrysler* was in error in light of *Betts* as

to retirement-plans which were not a "subterfuge." 109 S.Ct. at 2862. *Cargill* held that in a comparable situation Cargill was not required to justify the different treatment, for group life insurance purposes, of employees under 60 years of age and those over 60 years of age. *Cargill*, 855 F.2d at 686.

absence of "subterfuge" in the adoption of the retirement plan at issue, and, accordingly, the employer and the plan challenged should prevail. There was no equivalent of constructive discharge in the facts of this case even from Betts' perspective. Betts was not forced to retire because of her age; rather, she elected to retire, for health reasons, to receive retirement benefits.

Other courts that have considered similar issues have found for the employer and/or pension plan. *See EEOC v. State of Maine & Retirement System,* 644 F.Supp. 223 (D.Me.1986), *aff'd mem.,* 823 F.2d 542 (1st Cir.1987); *EEOC v. Cargill, Inc.,* 855 F.2d 682 (10th Cir.1988); and *EEOC v. USX Corp.,* No. 87–6044, 1989 WL 43651 (E.D.Pa. Mar. 23, 1989). The majority cites not a single case to support the result reached involving an employee who could not work and who then chose retirement benefits. There was no compulsory retirement forced upon an employee who desired to, or was capable of, continuing work. This was in no way comparable to a constructive discharge situation.

I believe the majority opinion overlooks the admonition in *Betts,* that "Congress recognized that not all age discrimination in employment is 'arbitrary'." 109 S.Ct. at 2865. Not all such discrimination, if it is shown, is the "type of age discrimination that Congress sought to eliminate." *Id.* Thus, even if Betts did establish some *prima facie* indicia of age discrimination, she did not demonstrate illegal, "arbitrary" age discrimination in this *"bona fide* benefit plan." The Committee Reports of the ADEA, as pointed out by the Supreme Court, indicate the primary purpose of ADEA was to encourage " 'hiring of older workers by permitting employment without necessarily including such workers in employee benefit plans'." *Id.* at 2867. Betts was hired at age 55; this would be strong evidence, in and of itself, that defendant employer was not disposed to discriminate

against older workers. She was, in addition, retained up through age 60 despite growing health problems and disability—a further such indication of absence of discrimination against an older employee. A broader reading of the language of exemption § 4(f)(2) "is the correct one" mandated by the Supreme Court rather than the narrow view taken by the majority. *Id.*

In light of the principles herein set out and the guidance of the Supreme Court in *Betts,* I would accordingly reverse the judgment of the district court.