March 12, 1993
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1696

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff, Appellant,

v.

COMMONWEALTH OF MASSACHUSETTS, ET AL.,

Defendants, Appellees.

ERRATA SHEET

Please make the following corrections in the opinion in
the above case released on March 4, 1993:

Page 11, 3 lines from bottom:

change "consitutional" to "constitutional"

Page 13, line 15:

change "Massachusetts's" to "Massachusetts'"

Page 22, line 4:

delete "in".

March 4, 1993
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1696

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff, Appellant,

v.

COMMONWEALTH OF MASSACHUSETTS, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Edward F. Harrington, U.S. District Judge]

Before

Breyer, Chief Judge,

Higginbotham,* Senior Circuit Judge,

and Boudin, Circuit Judge.

Lamont N. White, Attorney, with whom Donald R. Livingston,

General Counsel, Gwendolyn Young Reams, Associate General Counsel, and

Vincent J. Blackwood, Assistant General Counsel, were on brief for

appellant Equal Employment Opportunity Commission.
Steven S. Zaleznick, Cathy Ventrell-Monsees, and Thomas W.

Osborne on brief for American Association of Retired Persons, amicus

curiae.
Pierce O. Cray, Assistant Attorney General, with whom Scott

Harshbarger, Attorney General, was on brief for appellee Commonwealth

of Massachusetts.
James H. Quirk, Jr. for appellee The Barnstable County Retirement

Association.

March , 1993

*Of the Third Circuit, sitting by designation.

Higginbotham, Senior Circuit Judge. Massachusetts
Higginbotham, Senior Circuit Judge

requires state and local officials and general employees who are

seventy years old or older to take and pass a medical examination

as a condition of continued employment. The issue on this

appeal is whether such a requirement violates the Age

Discrimination in Employment Act (ADEA), 81 Stat. 602, as

amended, 29 U.S.C. 621 et seq. (1990). We hold that it does.

I.

In 1977, Massachusetts enacted Chapter 32 of

Massachusetts General Laws to regulate its retirement systems and

pensions. One component of Chapter 32, Section 90F, requires

Group 1 employees of the Commonwealth and its political

subdivisions who are seventy years of age or older to pass an

annual medical examination as a condition of continued

employment.1

1Section 90F provides in its entirety:

Any member in service classified in Group 1, or any
other person who would be classified in Group 1
except for the fact that he is not a member, shall
continue in service, at his option, notwithstanding
the fact that he has attained age seventy; provided,
however, that he is mentally and physically capable
of performing the duties of his office or position.
Such member or other person shall annually, at his
own expense, be examined by an impartial physician
designated by the retirement authority to determine
such capability. No deductions shall be made from
the regular compensation of such member or other
person under the provisions of this chapter for

-2-
2

Group 1 employees are "[o]fficials and general employees

including clerical, administrative and technical workers,

laborers, mechanics and all others not otherwise classified."

Mass. Gen. L. ch. 32, 3(2)(g) (1992). Under the regulations

enacted pursuant to section 90F, no later than 120 days before

the last day of the month when a Group 1 employee will reach the

age of seventy, the retirement board of which he or she is a

member notifies him or her of the retirement benefits to which he

or she would be entitled if he or she retired at the age of

seventy. In order to remain in employment after the age of

seventy, the employee must complete an application and submit to

a medical examination by a physician designated by the board.

Upon receipt of the report of the physician, the retirement board

votes to decide whether to grant the application for permission

to continue in service. If the application is granted, the

employee must repeat the process each year. If the application

is denied, the employee is retired on the last day of the month

of his or her birth. Mass. Regs. Code tit. 840, 11.01-11.02

(1992).

service after he has attained age seventy and upon
retirement such member or other person shall receive
a superannuation retirement allowance equal to that
which he would have been entitled had he retired at
age seventy.

Mass. Gen. L. ch. 32, 90F.

-3-
3

Barnstable County Retirement Association (BCRA) is one

of the 106 public retirement systems governed by 90F. In 1988

the BCRA required Mary Cavender, a librarian employed by a town

in Massachusetts, to pass a medical examination in order to

continue her employment with the town. She passed the medical

examination and was allowed to continue her employment. No

employees have been forced to retire since 90F has been in

effect.

On September 9, 1989, the Equal Employment Opportunity

Commission (EEOC) brought suit against Massachusetts and the

BCRA. The EEOC alleged that the requirements of 90F that

Massachusetts state and local employees aged seventy or older

take and pass an annual medical examination as a condition of

continued employment was violative of, and hence preempted by,

4(a) of the Age Discrimination in Employment Act (ADEA), 29

U.S.C. 623(a). Section 4(a) provides:

It shall be unlawful for an employer (1) to fail or
refuse to hire or to discharge any individual or
otherwise discriminate against any individual with
respect to his compensation, terms, conditions, or
privileges of employment, because of such individual's
age; (2) to limit, segregate, or classify his employees
in any way which would deprive or tend to deprive any
individual of employment opportunities or otherwise
adversely affect his status as an employee, because of
such individual's age; or (3) to reduce the wage rate
of any employee in order to comply with this chapter.

-4-
4

Following discovery, all parties moved for summary

judgment. The EEOC argued in its motion that 90F was

discriminatory on its face and that defendants had not

established a justification for using age as a factor in

determining who would be required to take and pass a medical

examination as a condition of continued employment.

Massachusetts' answer in its motion for summary judgment was

twofold: first, it argued that 4(a) of the ADEA was not

applicable to the dispute because 90F was not preempted by the

ADEA; second, and in the alternative, Massachusetts argued that

90F did not violate the ADEA because concerns over the fitness of

employees, rather than age, was the basis of the statute.

On April 17, 1992, the district court granted

defendants' motions for summary judgment, denying the EEOC's

motion. The court reasoned that the regulation of its employees

has traditionally been one of the historic powers of the state.

According to the court, the Supreme Court held in Gregory v.

Ashcroft, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991), that Congress

should make its intention clear and manifest when it intends to

preempt the historic powers of the state. In the view of the

court, Congress, in enacting the ADEA, did not make it clear and

manifest that it intended to "limit employer-states' ability to

assess the fitness of their employees." Moreover, the court

-5-
5

continued, the practice of requiring employees seventy years of

age or older to undergo an annual medical examination "is a

practice very conducive to the health and well being of those

employed by state government as well as by society at large."

Thus, the court concluded, 90F is not preempted by, and is not

violative of, the ADEA, and for the court to hold otherwise would

be "to indulge in judicial legislation to override the balance of

federal and state powers."

The EEOC now appeals the district court's grant of

summary judgment. The EEOC requests that we reverse the grant of

summary judgment in favor of appellees and that we remand

directing the district court to enter summary judgment in its

favor. The EEOC makes three main arguments in support of its

appeal. First, the EEOC reiterates that 90F violates the ADEA

on its face. Second, the EEOC maintains that age, and not

concerns over employee fitness, is the basis for 90F. Finally,

the EEOC argues that 90F does not qualify for the bona fide

employee benefit exception of the ADEA.

II.

Rule 56(c) of the Federal Rules of Civil Procedure

provides that summary judgment "shall be rendered forthwith if

the pleadings, depositions, answers to interrogatories, and

-6-
6

admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that

the moving party is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c). We exercise plenary review of summary

judgment dispositions. Olivera v. Nestle Puerto Rico, Inc., 922

F.2d 43, 44-45 (1st Cir. 1990). The facts of this case, as

recounted above, are not in dispute. So, we turn first to the

issue of whether 90F is preempted by the ADEA.

A.

Congress has the power to preempt state legislation

under the Supremacy Clause of Article VI of the Constitution.

Federal preemption law recognizes two types of preemption,

express and implied. Schneidewind v. ANR Pipeline Co., 485 U.S.

293, 300, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988); Wisconsin Publ.

Intervenor, et al. v. Mortier, 111 S.Ct. 2476, 2482, 115 L.Ed.2d

532 (1991); see also Wood v. General Motors Corp., 865 F.2d 395

(1st Cir. 1988). Express preemption occurs when Congress states

in the text of legislation that it intends to preempt state

legislation in the area. In the absence of such a specific

statement, a federal statute may also preempt by implication a

state statute. The United States Supreme Court has identified

the circumstances under which such implied preemption may occur:

In the absence of explicit statutory language, however,
Congress implicitly may indicate an intent to occupy a

-7-
7

given field to the exclusion of state law. Such a
purpose may be inferred where the pervasiveness of the
federal regulation precludes supplementation by the
States, where the federal interest in the field is
sufficiently dominant, or where the "object sought to
be obtained by the federal law and the character of
obligations imposed by it . . . reveal the same
purpose." Finally, even where Congress has not

entirely displaced state regulation in a particular

field, state law is pre-empted when it actually

conflicts with federal law. Such a conflict will be

found "'when it is impossible to comply with both state
and federal law, or where the state law stands as an
obstacle to the accomplishment of the full purposes and
objectives of Congress.'"

Schneidewind, 485 U.S. at 299-300 (citations omitted) (emphasis

added).

Before the district court the EEOC argued, and on

appeal it reiterates, that 90F actually conflicts with 4(a)

due to the impossibility of complying with both statutes.

Specifically, the EEOC maintains that, since only employees who

are seventy years of age or older are required to take and are

forced to retire if they fail an annual medical examination,

90F conflicts with 4(a) of the ADEA providing that it is

unlawful for an employer "to discharge . . . or otherwise

discriminate against any individual with respect to his . . .

terms, conditions, or privileges of employment because of such

individual's age." 29 U.S.C. 623(a)(1).

The district court rejected the EEOC's argument,

finding that in ADEA cases, Congress must expressly state an

-8-
8

intention in order for courts to find federal preemption. The

court determined that the recent Supreme Court decision in

Gregory v. Ashcroft had changed the standards for resolving

conflicts between local and federal government, deferring to

state sovereignty. According to the court, "in an effort to

preserve our federal system of government, the Supreme Court has

indicated that Congress should make its intention clear and

manifest if it intends to preempt the historic powers of the

states." quoting Gregory v. Ashcroft, 111 S.Ct. at 2401. Under

this new standard, the district court concluded that the ADEA is

ambiguous as to whether the statute was intended to apply to such

state legislation as 90F: "[I]t appears ambiguous, and even

unlikely, that Congress intended to outlaw a method of assessment

utilized by a state government which requires annual medical

examinations for its employees at the age of seventy."

It is true that the Gregory Court was unwavering in its

desire to protect state sovereignty and principles of federalism.

Id. at 2399. However, its reasoning and holding were far more

narrow and limited than the broad and sweeping interpretation

made by the district court. In Gregory, the United States

Supreme Court rendered a decision on the effects of the ADEA on

the Missouri Constitution which required mandatory retirement of

-9-
9

judges.2 Mo. Const. art. V, 26. The relevant clause of the

ADEA provided:

The term "employee" means an individual employed by any
employer except that the term "employee" shall not
include any person elected to public office in any
State or political subdivision of any State by the
qualified voters thereof, or any person chosen by such
officer to be on such officer's personal staff, or an
appointee on the policy making level or an immediate
adviser with respect to the exercise of the
constitutional or legal powers of the office.

29 U.S.C. 630(f). Due to the method of selection of state

judges in Missouri, it was unclear whether they were employees

within the meaning of 630(f).

It was ultimately the ambiguity of the judges' status

as employees or policymakers which the Court found fatal to their

capacity to be protected by the ADEA. Because Missouri judges

2Three years before the Supreme Court decided Gregory, the

First Circuit adjudicated precisely the same issue. EEOC v.

Massachusetts, 858 F.2d 52 (1st Cir. 1988). In that case,

the court had to determine the effect of the 1987 amendments
to the ADEA on a provision of the Massachusetts Constitution
which made age 70 the mandatory retirement age for all state
judges. The court affirmed the district court's
determination that the Act did not override the state
constitutional provision, finding that the state's judges
fell within the policy-making exception to employees
protected by the ADEA, 29 U.S.C. 630(f). The court even
relied on the same rationale of respect for principles of
sovereignty, as did the Court in Gregory: "Without question,

the tenure of state judges is a question of exceeding
importance to each state, and a question traditionally left
to be answered by each state. Any federal encroachment on a
state's freedom of choice in this area, therefore, strikes
very close to the heart of state sovereignty." EEOC, 858

F.2d at 54.

-10-
10

were subject to retention elections, they could be construed as

elected officials, thus excluded from the ADEA. It was unclear,

however, whether state court judges were state officials on the

"policy-making level." The Gregory Court aptly held that, where

provisions are ambiguous and state sovereignty is at issue,

courts should reason carefully when making determinations as to

preemption. Gregory, 111 S.Ct. at 2401. "Congressional

interference with this decision of the people of Missouri,

defining their constitutional officers, would upset the usual

constitutional balance of federal and state powers. For this

reason, 'it is incumbent upon the federal courts to be certain of

Congress' intent before finding that federal law overrides' this

balance." Id. (quoting Atascadero State Hosp. v. Scanlon, 473

U.S. 234, 243, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) (determining

whether federal statute abrogated sovereign immunity of states

under the 11th Amendment)). Based on that reasoning, the Gregory

Court concluded that the ADEA did not preempt the Missouri

Constitution's mandatory requirement for judges. Id. at 2408.

Here, the district court misinterpreted the

significance of the Court's reliance on principles of federalism

and respect for state sovereignty. The Missouri constitutional

provision was concerned, not with regulating health care, but

with ensuring the qualifications of the highest state officials.

-11-
11

"The[] cases [cited] stand in recognition of the authority of the

people of the States to determine the qualifications of their

most important government officials." Gregory, 111 S.Ct. at

2402; see also EEOC v. Massachusetts., 858 F.2d 52 (1st Cir.

1988), discussed supra note 3. Relying on Sugarman v. Dougall,

413 U.S. 634, 93 S.Ct. 2842, 37 L.Ed.2d 853 (1973), the Court

recognized that Gregory was part of the body of decisions which

involve the Court in adjudicating "the unique nature of state

decisions that 'go to the heart of representative government.'"

Gregory, 111 S.Ct. 2401. The Court made it clear that its

deference arises not from a disdain for preemption doctrine in

the context of the ADEA, but rather because:

the case concerns a state constitutional provision
through which the people of Missouri establish a
qualification for those who sit as their judges. This

provision goes beyond an area traditionally regulated

by the States; it is a decision of the most fundamental

sort for a sovereign entity. Through the structure of

its government, and the character of those who exercise
government authority, a State defines itself as a
sovereign.

Id. at 2400 (emphasis added).

Thus, while Gregory refused to find the state

Constitution preempted by the ADEA, the opinion was unequivocally

clear in the narrowness of its holding. At no point did the

Court suggest that all state regulations of public employees are

questions at the heart of state sovereignty. Nor did it suggest

-12-
12

that Gregory would be controlling on the federal preemption

doctrine where there was not any ambiguity in the language of the

statute. The Court stated: "The ADEA plainly covers all state

employees except those excluded by one of the exceptions. Where

it is unambiguous that an employee does not fall within one of

the exceptions, the Act states plainly and unequivocally that the

employee is included." Id. at 2404.

The district court erred, not only in its

interpretation as to the breadth of the Gregory holding, but also

in its applicability to the instant case. Here, there are no

ambiguities in the terms or provisions of 90F that should give

us pause as to whether those affected are employees within the

meaning of 4(a). The district court determined that the effect

of the 1986 congressional amendment to the ADEA on statutes such

as Massachusetts' is de facto ambiguous. Such reasoning,

however, begs the threshold question of preemption. In Gregory,

the text of the ADEA itself is unclear as to its applicability to

judges, giving rise to ambiguity which the Court resolved in

Missouri's favor. Here, there is no textual uncertainty, and the

proper method of resolving the issue is to analyze the conflict

under the standards of preemption doctrine, something the

district court never did.

B.

-13-
13

To recapitulate, "in the absence of an express

congressional command, state law is preempted if that law

actually conflicts with federal law." Cipollone v. Liggett Group,

Inc., 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992). State law

conflicts with federal law when compliance with both is a

physical impossibility. See, e.g., Greenwood Trust Co. v.

Massachusetts, 971 F.2d 818 (1st Cir. 1992); Pedraza v. Shell Oil

Co., 942 F.2d 48 (1st Cir. 1991). 3

Under 90F, retirement boards are required to take

specific action upon the seventieth birthday of state employees.

The possible result of this action is the involuntary retirement

of state employees who fail to pass the requisite tests.

Such action is not reconcilable with the plain purpose of 4(a)

which prohibits employers from discrimination against any

individual with respect to his compensation, terms, conditions,

or privileges of employment, because of such individual's age.

3The district court's opinion focuses on the reasonableness
of the state's method of implementing the dual goals of
enabling state employees to continue working and ensuring
their competency. This is not, however, an equal protection
analysis in which rational and legitimate state interests
are to be respected by the courts. Under preemption
analysis, the focus is not on the purposes of the
Commonwealth's statute, but on the interaction between the
state statute and the federal statute in question. In the
context of the ADEA, reasonableness only enters into
judicial analysis in assessments of affirmative defenses
available under 4(f).

-14-
14

For example, in EEOC v. Wyoming, 460 U.S. 226, 103

S.Ct. 1054, 75 L.Ed.2d 18 (1983), the Supreme Court considered

whether a Wyoming statute, which required game and fish wardens

who had reached age 55 to seek the approval of their employer in

order to remain employed, violated the ADEA. Much as

Massachusetts does here, Wyoming argued that the statute in

question did not violate the ADEA on its face because the statute

served in assuring the physical preparedness of Wyoming game

wardens to perform their duties. The Court rejected the argument

and concluded that Wyoming could continue the statute only if it

could demonstrate age was a bona fide occupational qualification

for the job of game warden. Id. at 239. Significantly, the Court

wrote:

Under the ADEA, [] the State may still, at the very
least, assess the fitness of its game wardens and
dismiss those wardens whom it reasonably finds to be
unfit. Put another way, the Act requires the State to
achieve its goals in a more individualized and careful
manner than would otherwise be the case, but it does
not require the State to abandon those goals, or to
abandon the public policy decisions underlying them.

Id.

Similarly, here Massachusetts may still assess the

fitness of its employees and dismiss those employees whom it

reasonably finds to be unfit. But it must do so "in a more

individualized and careful manner" than the scheme envisioned by

90F. In other words, Massachusetts is not being asked to

-15-
15

abandon the public policy of determining the fitness of its

employees, just as Wyoming was not being asked to abandon the

public policy of determining the physical preparedness of its

game wardens. Instead, pursuant to the ADEA, just as Wyoming

could not arbitrarily pick 55 years of age as the point at which

to measure the physical preparedness of its game wardens,

Massachusetts may not arbitrarily set up seventy years of age as

the point at which to determine the fitness of its employees.

The Supreme Court concluded in EEOC v. Wyoming:

[Wyoming] remain[s] free under the ADEA to continue to
do precisely what [it is] doing now, if [it] can
demonstrate that age is a "bona fide occupational
qualification" for the job of game warden. . .. [T]he
state's discretion to achieve its goals in the way it
thinks best is not being overridden entirely, but it is
merely being tested against a reasonable federal
standard.

Id. at 240. Here, Massachusetts' discretion to achieve its goals

of determining the fitness of its employees is being tested

against a reasonable federal standard. And, in the absence of an

affirmative defense, we must conclude that compliance with both

the state and federal statutes is a physical impossibility,

meaning that the ADEA must preempt the Massachusetts law.

The two statutes are also in actual conflict because

enforcement of the Massachusetts law creates an obstacle for the

implementation of the goals of the ADEA. Congress enacted the

ADEA to prevent the arbitrary and socially destructive

-16-
16

discrimination on the basis of age. Western Air Lines v.

Criswell, 472 U.S. 400, 409, 105 S.Ct. 2743, 86 L.Ed.2d 321

(1985); Trans World Air Lines v. Thurston, 469 U.S. 111, 120, 105

S.Ct. 613, 83 L.Ed.2d 523 (1985). The United States Supreme

Court has explained that the ADEA is of particular force when

mandatory retirement is at issue, as it is here. Criswell, 472

U.S. at 410. In the words of the Court, "[t]he legislative

history of the 1978 Amendments to the ADEA makes quite clear that

the policies and substantive provisions of the Act apply with

especial force in the case of mandatory retirement provisions."

Id. Moreover, "[t]hroughout the legislative history of the ADEA,

one empirical fact is repeatedly emphasized: the process of

psychological and physiological degeneration caused by aging

varies with each individual." Id. at 409. Thus, the ADEA was

enacted in large part to prevent mandatory retirement based on

"innocent" misperceptions as to the abilities of older employees,

as well as more insidious "business" judgments as to their cost.

Here, the Commonwealth of Massachusetts allows age to

be the determinant as to when an employee's deterioration will be

so significant that it requires special treatment. Such a

conception of and use of age as a criteria for decline and

unfitness for employment strikes at the heart of the ADEA. The

entire point of the statute is to force employers to abandon

-17-
17

previous stereotypes about the abilities and capacities of older

workers. Employers may still regulate and condition employment,

but they may no longer immediately turn to age as a convenient,

simple criterion. They must be prepared to justify their use of

age rather than individualized factors.

In finding that the ADEA did not preempt 90F, the

district court reasoned that 90F is "an Act relating to the

qualifications of state employees which was lawful and an

eminently reasonable expression of state power when enacted."

Thus, the Court concluded, to hold 90F as preempted by the ADEA

would be "to indulge in judicial legislation to override the

balance of federal and state powers." No one disputes the

proposition that the historic functions of regulating the

relationship between the public employer and public employees

have traditionally been left to the states. But it is also far

too late in the day to argue that Congress does not have the

power to require states to regulate the public employer\public

employee relationship in a non-discriminatory fashion. 4

Because the district court rested its grant of summary

judgment for the defendants solely on its interpretation of

4Case law supports the application of other federal anti-
discrimination statutes to state employment relationships.
See EEOC v. County of Allegheny, 705 F.2d 679, 682 (3d Cir.

1983); Rosenfeld v. Southern Pacific Co., 444 F.2d 1219,

1225 (9th Cir. 1971).

-18-
18

whether the ADEA preempted facially the Massachusetts law, it did

not reach the other defenses made by the Commonwealth. The

appellees, however, reassert those defenses on appeal and we

address them next.

III.

Appellees argue that, even if the annual medical

examination requirement is found to conflict with 4(a) of the

ADEA, 90F is still exempt from the prohibitory provisions of

the ADEA under exceptions denoted in 4(f)(1) and 4(f)(2) of

the ADEA.

A.

Section 4(f)(1) provides that "It shall not be unlawful

for an employer, employment agency, or labor organization (1) to

take any action otherwise prohibited . . . where age is a bona

fide occupational qualification reasonably necessary to the

normal operation of the particular business, or where the

differentiation is based on reasonable factors other than age . .

. ." (emphasis added).

According to appellees, there is a possibility that the

physical examinations could be based on a reasonable factor other

than age. They argue that in interpreting 90F, our focus

should be not on the age requirement which triggers the condition

-19-
19

of continuing employment, but rather, on the examination

requirement itself. Employees over seventy will not be

involuntarily retired because they are over seventy, but because

their mental and or physical faculties are failing.

We cannot accept this argument. In Los Angeles Dep't of

Water & Power v. Manhart, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d

657 (1978), the Supreme Court confronted and rejected a similar

argument. Manhart involved a policy of the Los Angeles

Department of Water and Power requiring larger contributions from

women than men to the Department's pension fund because women as

a group live longer than do men as a group. A class made up of

women employed or formerly employed by the department challenged

the policy as a violation of Title VII of the Civil Rights Act of

1964. Plaintiffs claimed that the contribution differential

constituted discrimination on the basis of sex. The Department

answered that sex was not the factor on which the distinction was

being drawn; it was longevity. The Court rejected this

contention, holding that but for their sex, women would not be

required to pay more for their retirement benefits. The Court

acknowledged that as a class women tend to live longer than men.

Manhart, 435 U.S. at 707. But the Court found it to be equally

true that all individuals in the respective classes do not share

the characteristics that differentiate the average class

-20-
20

representatives. Id. at 708. Thus, the Court reasoned that even

where characteristics may be class-based, Title VII requires

fairness to individuals rather than to classes. Id. In response

to the Department's specific argument that the different

contributions exacted from men and women were based on the factor

of longevity rather than sex, the Court wrote:

It is plain [] that any individual's life expectancy is
based on a number of factors, of which sex is only one.
The record contains no evidence that any factor other
than the employee's sex was taken into account in
calculating the [] differential between the respective
contributions by men and women. . .. [O]ne cannot say
that an actuarial distinction based entirely on sex is
"based on any other factor than sex. Sex is exactly
what it is based on."

Id.

Similarly, here appellees argue that the requirement

that employees aged seventy or older pass an annual medical

examination is based on fitness rather than age. But, as the

Supreme Court found in Manhart, it is clear that an individual's

fitness to work is based on a number of factors, of which age is

only one. And, as in Manhart, the record contains no evidence

that any factor other than the employee's age was taken into

account in requiring an annual medical examination. Thus, as in

Manhart, we are forced to conclude that age is exactly what 90F

is based on. The reasonable factor other than age defense is

simply not applicable to 90F.

-21-
21

Appellees argue that Manhart gave only cursory

treatment to this issue and that because it predated Gregory, it

has less weight. Both assertions are incorrect. As an initial

matter, Manhart is clear in holding that the sex-based

differentiation in question could not be justified. Moreover,

in Gregory the reasonable factor defense was never raised.

Finally, while Manhart does arise out of Title VII and not out

of the ADEA, the First Circuit, like the United States Supreme

Court, has made clear that the ADEA tracks the law of Title VII.

Thurston, 469 U.S. at 121; Rivas v. Federacion de Asociaciones

Pecuarias de Puerto Rico, 929 F.2d 814, 820 n.15 (1st Cir. 1991)

("As the substantive provisions of the ADEA were derived in haec

verba from Title VII . . . we may look to constructions of the

term [employer] in the Title VII . . . context for guidance.")

(citing Lorillard v. Pons, 434 U.S. 575, 584 & n. 12, 98 S.Ct.

866, 55 L.Ed.2d 40 (1978); Zipes v. Trans World Airlines, Inc.,

455 U.S. 385, 395 n. 11, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1989));

Loeb v. Textron, Inc., 600 F.2d 1003, 1014, 1015 (1st Cir. 1979).

The alternative defense in 4(f)(1) -- the bona fide

occupational qualification -- is an affirmative defense which the

Commonwealth does not raise. In EEOC v. East Providence, 798

F.2d 524, 528 (1st Cir. 1986), the First Circuit adopted the two-

-22-
22

pronged test articulated by the United States Supreme Court in

Criswell. Under the Criswell test, in assessing a BFOQ defense,

an employer must first establish that the job
qualifications which the employer invokes to justify
his discrimination are "'reasonably necessary to the

essence of his business.'" If the employer succeeds in
making this showing, it must then establish that it "is
compelled to rely on age as a proxy for the safety-
related job qualifications validated in the first
inquiry."

East Providence, 798 F.2d at 528 (citing Criswell, 472 U.S. at

413-414.) (emphasis in original)). In East Providence the Court

found that the city had successfully established reasonable

necessity and its reliance on age as the ordinance related to

mandatory retirement of police officers over age 60. Here, the

Commonwealth has not tailored the statute to particular jobs, but

rather to all. See also Thurston, 469 U.S. at 122 ("In order to

be permissible under 4(f)(1), however, the age-based

discrimination must relate to a 'particular business.'").

B.

We now turn to appellees' argument that 90F fits

under the 4(f)(2) exemption of the ADEA. That section provides

in relevant part:

It shall not be unlawful for an employer, employment
agency, or labor organization . . . to take any action
otherwise prohibited under subsection (a), (b), (c), or
(e) of this section--
. . . .
(B) to observe the terms of a bona fide employee
benefit plan--

-23-
23

(i) where, for each benefit or benefit package, the
actual amount of payment made or cost incurred on
behalf of an older worker is no less than that made or
incurred on behalf of a younger worker . . .
(ii) that is a voluntary early retirement incentive
plan consistent with the relevant purpose or purposes
of this chapter.
Notwithstanding clause (i) or (ii) of subparagraph (B),
no such employee benefit plan or voluntary early

retirement incentive plan shall excuse the failure to

hire any individual, and no such employee benefit plan

shall [] require or permit the involuntary retirement

of any individual specified by section 631(a) of this

title, because of the age of such individual.

29 U.S.C. 623 (4)(f)(2) (1992) (emphasis added).

In order to be exempt pursuant to 4(f)(2), an

employment plan must be a bona fide plan which is covered by

4(f)(2), the employer's actions must be in observance of the

plan, and the plan must not be a subterfuge to evade the purposes

of the ADEA. Public Employees Retirement System v. Betts, 492

U.S. 158, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989); EEOC v. Boeing

Svcs. Int'l, 968 F.2d 549 (5th Cir. 1992); EEOC v. Orange County,

837 F.2d 420, 421 (9th Cir. 1988). The plan envisioned in 90F

facially violates the qualification that the plan may not require

or permit involuntary retirement. The United States Supreme

Court in Betts concluded that in order for a benefit plan to

qualify for the 4(f)(2) exemption, it must not be a method of

discriminating in the "nonfringe" aspects of the employment

relationship. Betts, 492 U.S. at 177. The Court elaborated that

4(a)(1) and 4(f)(2) could both be given effect only if

-24-
24

4(f)(2) exempts bona fide plans that are not a method of

discriminating in other nonfringe benefit areas. Id.; see also

EEOC v. Westinghouse Elec. Corp., 925 F.2d 619, 623 (3d Cir.

1991) ("The Court did not define 'nonfringe benefit' [in Betts]

but its use of the term makes clear that the terms 'bona fide

employee benefit plan' and 'nonfringe benefit' are mutually

exclusive."). Although the Court remanded the case for

resolution of this issue, it held: "As a result of the 1978

amendments, 4(f)(2) cannot be used to justify forced retirement

on account of age." Betts, 492 U.S. at 166 n.2. Similarly, in

Thurston, 469 U.S. at 124, the Court stated that in the context

of 4(f)(2), "any seniority system that includes the challenged

practice is not 'bona fide' under the statute." See also Betts

v. Hamilton County, 897 F.2d 1380, 1381 (6th Cir. 1990) (on

remand from the Supreme Court, determining plan required

involuntary retirement based on age when disability choices were

restricted upon reaching age of sixty).

Section 90F cannot qualify for the 4(f)(2) exemption.

Section 90F acts as a conditional involuntary retirement program,

which some employees may escape through satisfaction of a burden

imposed on them by the statute. It regulates not "fringe

benefits," but the heart of the employment relationship itself.

Section 90F clearly forces retirement in precisely the manner

-25-
25

which the Supreme Court explicitly found to be beyond the scope

of the exemption.5

IV.

In conclusion, we hold that 90F is violative of, and

is preempted by, the ADEA because it stands in direct conflict

with 4(a) of the ADEA. Specifically, Massachusetts cannot

comply with the ADEA prohibition that no employer may

discriminate against any individual because of age with respect

to compensation, terms, conditions or privileges of employment,

while at the same time requiring employees seventy years of age

or older to pass an annual medical examination as a condition of

continued employment pursuant to 90F. We also hold that 90F

is not exempt from the requirements of the ADEA based on either

of the two exemptions provided in 4(f)(1) or 4(f)(2) of the

ADEA. Under 4(f)(1), we cannot rationally conclude that the

distinction among employees for the purpose of implementing 90F

is based on any reasonable factor other than age. Under

4(f)(2), we cannot rationally find that 90F satisfies the bona

fide employee benefit plan exemption. In order for a plan to

5As is argued in the amicus brief, "Since 90F permits . .

. only those employees age seventy and older who pass the
annual examination to continue employment, the only
conclusion to be drawn is that those who do not pass the
examination are not permitted to continue employment."

-26-
26

qualify under this exception, there may not be a provision which

requires mandatory retirement. Mandatory retirement is, of

course, the point of 90F.

For the foregoing reasons, we will reverse the order

of the district granting summary judgment in favor of

Massachusetts and the BCRA, and we will remand to the district

court for entry of summary judgment in favor of EEOC and for

further proceedings consistent with this opinion.

Reversed and Remanded.

-27-
27